**TITUSVILLE CABLE TV, INC.,**
Petitioner,

v.

**UNITED STATES of America and
Federal Communications Com-
mission, Respondents,**

Lamb Enterprises, Inc., Intervenor.

**Byron McCRACKEN, Jr., d/b/a South
Side Cable Company, Petitioner,**

v.

**UNITED STATES of America and Fed-
eral Communications Commis-
sion, Respondents,**

Lamb Enterprises, Inc., Intervenor.

Nos. 16559, 16650.

United States Court of Appeals
Third Circuit.

Argued Sept. 16, 1968.

Decided Dec. 23, 1968.

Kalodner, Circuit Judge, dissented.

George J. Barco, Barco & Barco, Meadville, Pa., for petitioner Titusville Cable TV, Inc.

Spencer Ervin, Jr., Tate & Ervin, Philadelphia, Pa., for petitioner Byron McCracken.

Lenore G. Ehrig, F. C. C., Washington, D. C., for respondent Federal Communications Commission.

Herbert M. Schulkind, Fly, Shuebruk, Blume & Gaguine, Washington, D. C., for intervenor Lamb Enterprises, Inc.

Before McLAUGHLIN, KALODNER and ALDISERT, Circuit Judges.

## OPINION OF THE COURT

McLAUGHLIN, Circuit Judge.

Petitioners, Titusville Cable TV, Inc. and Byron McCracken, Jr., who operates under the name South Side Cable Company, seek review of separate memorandum opinions and orders of the Federal Communications Commission denying their petitions for waiver of the nonduplication provisions of 47 C.F.R. 74.1103(F). Review is sought pursuant to Section 402(a) of the Communica-

tions Act of 1934[1] and Section 2342(1) of the Judicial Review Act of 1950.[2] Titusville Cable TV, Inc. also files pursuant to Section 10 of the Administrative Procedure Act of 1946, 5 U.S.C. § 702 (1966) and Rule 18 of the Rules of this Court, U.S.Ct.App. 3rd Cir. Rule 18, 28 U.S.C.A. Both waiver requests were denied without evidentiary hearings. Pending review this Court stayed the Commission's orders and petitioners' appeals were consolidated by this Court. (Order of August 3, 1968). Lamb Enterprises, Inc., licensee of WICU–TV, Erie, Pa., in whose favor the nonduplication protection was granted, intervened. Petitioners now contest the validity of the nonduplication rule, the propriety of the rule-making procedures regarding the CATV rules, and the constitutionality of the denial of the waiver requests without a hearing.

Petitioners operate community antenna television systems (CATV) in Titusville, Pa., an area where natural topographical conditions prevent multiple television service to the public. Both petitioners provide reception service from twelve television stations including intervenor, WICU–TV. Certain of the stations which are received are affiliated with the same national television network with the result that some network television programs are substantially duplicated. The Commission in earlier hearings concluded, after intensive study, that this duplication could significantly and adversely affect the public interest by discouraging local television broadcasting service and, thereby, eventually deprive the public of free service in outlying areas. The Commission, sometime thereafter, properly asserted its regula-

---

1. Section 402(a) of the Communications Act of 1934, 48 Stat. 1064, 47 U.S.C. 402(a), as amended, reads as follows:
"Any proceeding to enjoin, set aside, annul, or suspend any order of the Commission under this chapter (except those appealable under subsection (b) of this section) shall be brought as provided by and in the manner prescribed in Chapter 19A of Title 5."

2. Section 2342(1) of the Judicial Review Act of 1950, 28 U.S.C. § 2342(1) (Supp. 1967), reads as follows:
"The court of appeals has exclusive jurisdiction to enjoin, set side, suspend (in whole or in part), or to determine the validity of—
(1) all final orders of the Federal Communications Commission made reviewable by section 402(a) of title 47 * * *."

tory jurisdiction over CATV systems generally and promulgated rules providing, inter alia, protection against program duplication for local stations as against other stations received by the CATV system. See 47 C.F.R. 74.1103(f) (1966).

In June 1966, intervenor (WICU–TV), pursuant to the cited rule, requested "program exclusivity" which would require petitioners to delete reception of the duplicating programs of the other NBC stations from their CATV systems. Petitioners separately requested waiver of the nonduplication rule pursuant to Section 74.1109, 47 C.F.R. 74.1109, which provides that " * * * the Commission may waive any provision of the rules relating to the distribution of television broadcast signals by CATV systems * * *." It was urged by petitioners in support of their waiver requests that to grant WICU–TV program exclusivity would result in removal by petitioners of signals from other stations which are superior to those of WICU–TV and, therefore, the public interest would not be served. Those petitions for waivers were opposed by WICU–TV. Both petitions were denied without a hearing by the Commission.

It must be noted at the outset that petitioners never filed petitions for rehearing. The Commission urges that Section 405 of the Communications Act, 47 U.S.C. § 405, prohibits petitioners from raising certain issues before this Court which were not first presented to the Commission. Petitioner, Titusville, argues, however, that all the issues raised before this Court were effectively presented before the F.C.C. in the proceedings which led to the First Report and Order, 30 F.R. 6038, 38 F.C.C. 683 (1965) and the Second Report and Order, 31 F.R. 4540, 2 F.C.C.2d 725 (1966). Under the particular circumstances of these cases we will not at this time resolve respondent's above mentioned objection as we deem it important to address ourselves to all of the other issues before us.

█ The Supreme Court of the United States decided on June 10, 1968,

that the F.C.C. has jurisdiction over CATV systems. United States et al. v. Southwestern Cable Company et al., 392 U.S. 157, 88 S.Ct. 1994, 20 L.Ed.2d 1001. To the same effect, see Valley Vision, Inc. v. F.C.C., 399 F.2d 511 (9 Cir. Aug. 27, 1968). The Court, however, did not specially pass upon the validity of the Commission's CATV rules. Petitioners now protest that the nonduplication rule is invalid. They claim initially that this regulation contravenes both statutory and constitutional guarantees of free speech. We cannot agree. That argument has been specifically rejected with respect to the distant-signal rules of the F.C.C. Buckeye Cablevision, Inc. v. F.C.C., 128 U.S.App.D.C. 262, 387 F.2d 220 (1967). There, Chief Judge Bazelon stated for the Court:

"The distant signal rules are also challenged as an illegal restraint on First Amendment rights. It is true that CATV systems disseminate programs carrying a wide range of information. But we think the restraint imposed by the rules is no more than is reasonably required to effectuate the public interest requirements of the Act. As we have pointed out, the rules are not a flat bar against distant-signal importation. The restraint may be only temporary if Buckeye can show that carrying WJIM–TV will not adversely affect broadcasting in Toledo." (387 F.2d 220, 225).

Likewise, in the litigation before us the nonduplication rule is not an absolute bar to the broadcasting of a program. Its operational effect is to merely prevent duplication of a program the same day the program is broadcast by the station entitled to program exclusivity. Under these circumstances nonduplication is reasonable restraint designed to protect the public interest with as yet no direct restrictions in the Commission's regulations which would prohibit petitioners from originating their own programs. In this situation we are satisfied that the nonduplication mandate does not conflict with the dictates of the First Amend-

ment. In Conley Electronics Corp. v. F.C.C., 394 F.2d 620, 624 (10 Cir. 1968), cert. den. October 14, 1968, 393 U.S. 858, 89 S.Ct. 127, 21 L.Ed.2d 127, the Court flatly rejected Conley's claim that the nonduplication rule treads upon its first amendment right to freely distribute available television signals, saying:

"Moreover, the argument is without merit. Several Courts have rejected similar contentions in upholding a denial by the Commission of a license to a microwave carrier seeking to serve a CATV system. See Carter Mountain Transmission Corp. v. F.C.C., 116 U.S. App.D.C. 93, 321 F.2d 359 (1963); Idaho Microwave, Inc. v. F.C.C., 122 U.S.App.D.C. 253, 352 F.2d 729 (1965). See also National Broadcasting Co. v. United States, 319 U.S. 190, 63 S.Ct. 997, 87 L.Ed. 1344 (1943). Conley seeks to distinguish those cases on the ground that they were concerned with licensing rather than direct regulation of CATV systems. We think, however, that the cases are indistinguishable. In both situations what is involved is reasonable regulation in the public interest. Cf. Buckeye Cablevision, Inc. v. F.C.C., D.C.Cir., [128 U.S.App.D.C. 262] 387 F.2d 220 (1967)."

See also Black Hills Video Corp. v. F.C.C., 399 F.2d 65 (8 Cir. 1968).

■ Petitioner Titusville next suggests that the Commission by refusing a waiver of the rules has given intervenor WICU–TV, a monopoly over a certain audience which in itself constitutes a confiscation of property. We find no merit to that theory. The Commission's interest is not necessarily in the economic survival of a local station but rather the protection of the public. Program Policy Statement, 20 Pike & Fischer, R.R. 1901 (1960). There are no circumstances in this proceeding which would justify a finding of the monopoly charged.

■■ Titusville alleges further that the rule is invalid since it is based on a theory of unfair competition, a finding that the Commission has no statutory authority to make. In support of this the decision in F.C.C. v. Sanders Brothers Radio Station, 309 U.S. 470, 60 S.Ct. 693, 84 L.Ed. 869 (1940) is cited. Petitioner adheres to the hypothesis that the Commission's interests are solely to protect the economic interests of the local station. That argument was put to rest in Conley, supra, 394 F.2d p. 623 where the Court said:

"In Sanders the Court held that since it is not the purpose of the Act to protect a licensee against competition, economic injury to an existing station standing alone, is not a ground for denying a license application for a new station. But the Court was quick to add that the question of competition becomes vitally important and should not be disregarded by the Commission, when economic injury to an existing station may result in a diminution or reduction of broadcast service to the public. * * * As we have seen it was precisely this prospect of over-all reduction of television service, hence, injury to the public, which prompted the Commission to adopt its CATV rules. We hold that the nonduplication rule was a reasonable exercise of the Commission's authority."

It is insisted that the interest of the public would not be served in the instant circumstances because allegedly intervenor's signal is inferior to petitioners in the Titusville area. That brings us to the merits of the Commission's denial of the waivers. Titusville's offer of proof in such connection was found by the Commission to be "inconclusive". After a careful review of all the evidence we cannot say that the Commission erred in its judgment. Recent decisions on this question indicate that the Commission should require greater factual specificity than petitioners have presented. Channel 9 Syracuse, Inc. v. F.C.C., 128 U.S.App. D.C. 187, 385 F.2d 969 (1967); Hubbard Broadcasting, Inc. v. F.C.C., 128 U.S. App.D.C. 197, 385 F.2d 979 (1967). Titusville submitted to the Commission an engineer's affidavit which concedes that there was no evidence of material

weakness of WICU–TV's signal at Titusville. South Side Cable Co.'s petition is unsupported by any engineering data. Titusville now asks us to consider what it contends is more precise engineering data which was not before the Commission and, therefore, cannot be received by this Court. On the issue of whether the signal of WICU–TV is substandard in Titusville it is undisputed that said station must supply the requisite field intensity for that section in order to retain its operative license. There are no charges by petitioners that the license of WICU–TV should be forfeited because its signal is substandard in Titusville. From everything before us, it would appear that any deficiency, if any, with respect to the WICU–TV signal is in its reception not in its projection. Wheeling Antenna Company v. United States, 391 F.2d 179 (4 Cir. 1968). Under these circumstances the Commission did not abuse its discretion in denying the waiver petitions.

Petitioners also complain about not having been afforded an evidentiary hearing. It should be emphasized that, with regard to CATV systems, the Commission established a special ad hoc procedure rather than adapting then existing procedural rules to CATV systems. South Side Cable Co. would have it that CATV systems must be allowed the same procedural rights as licensees under the Communications Act. Therefore, it maintains that it is entitled to a hearing on its allegation that there are material, disputed questions of fact This argument was eliminated by the landmark opinion in Conley, supra, wherein it is stated at page 624 of 394 F.2d:

"Preliminarily, Conley seems to suggest that it is entitled to a hearing under the following provisions of the Communications Act: § 309(e) * * § 303(m) (2) * * * § 312(c) * * and § 316 * * *. The short answer is that Conley, by its own admission, is neither an applicant for a license nor a licensee. It is clear, therefore, that the various statutory provisions relied upon are inapplicable by their own terms."

South Side Cable Co.'s reliance is on the statutory provisions that are rendered inapplicable in Conley, supra. Petitioners simply are not entitled to the same procedural rights as licensees under the Communications Act. Titusville carries that thought one step further. It admits that a CATV operator is not a licensee and, therefore, that no analogy to a licensee can be drawn. However, Titusville says "What is analogous is the right that a common carrier or radio station licensee would have to an evidentiary hearing .where they requested a waiver of certain applicable provisions of the rules". Obviously the attempted analogy is misconceived. It still remains the fact that neither petitioner is a licensee and it is clear from the Second Report and Order that it was the Commission's intent to set up separate procedural regulations apart from those already existing in the Communications Act. As the Second Report and Order reads at par. 97:

"It has been suggested in the comments that the Commission should adopt specific rules providing for summary, non-hearing, procedures to handle request for waiver of CATV rules or for different treatment or affirmative relief. We think this suggestion has merit.

" * * * Accordingly, we have undertaken in Section 74.1109 of the attached rules to devise flexible and fair procedures which will generally permit expeditious processing of such requests."

We hold, therefore, that the procedural provisions in the Communications Act regarding hearing requirements for common carriers and radio licensees are inapplicable to CATV operators seeking a hearing on their right to waiver of the Commission's rules.

Petitioners attack the denial of the waivers without an evidentiary hearing as arbitrary and capricious under Section 74.1109 (47 C.F.R. 74.1109).

Under Section 74.1109(a) " * * * the Commission may waive any provision of the rules relating to the distribution of television broadcast signals by CATV systems * * * ". Subdivision (f) provides that the Commission "after consideration of the pleadings, may determine whether the public interest would be served by the grant, in whole or in part, or denial of the request or may issue a ruling on the complaint or dispute. The Commission may specify other procedures, such as oral argument, evidentiary hearing * * * as it deems appropriate". When general rules are enacted in a valid rule-making proceeding they may be applied by the Commission without individual adjudicatory hearings unless a party shows reasons why the public interest would be served by an individualized waiver of the rules. California Citizens Band Ass'n v. United States, 375 F.2d 43 (9 Cir. 1967); Interstate Broadcasting Co. v. F.C.C., 116 U.S.App.D.C. 327, 323 F.2d 797 (1963). Petitioners allege they have presented sufficient evidence to show that the public interest would be served by granting the waivers. Although a petition for waiver may be submitted informally. Section 74.1109(c) (1) requires:

> "The petition should state the relief requested and may contain alternative requests. It shall state fully and precisely all pertinent facts and considerations relied upon to demonstrate the need for relief requested and to support a determination that a grant of such relief would serve the public interest. Factual allegations shall be supported by affidavits of persons with actual knowledge of the facts, and exhibits shall be verified by the person who prepares them."

After a careful review of the petitions we find that the Commission's action in not having an evidentiary hearing was not arbitrary or capricious. Under these petitions no hearing was required. Wheeling Antenna Company v. United States, supra. As set out in Wheeling, supra p. 182, Presque Isle TV Co. v. F.C.C., 387 F.2d 502 (1 Cir. 1967) involved a fact problem not covered by the Commission rules. It is not authority for a mandatory evidentiary hearing. In passing, it does not even appear on the record that either petitioner ever requested an evidentiary hearing.

■ Finally, petitioners aver that the imposition of additional substantive standards regarding waivers of agency rules constitutes rule-making without compliance with the Administrative Procedure Act. The Administrative Procedure Act imposes no requirements for an adversary hearing before an administrative agency, but only details the procedure to be followed if and when a hearing is required by some other statute. 5 U.S.C. § 554; Conley, supra; Webster Groves Trust Co. v. Saxon, 370 F.2d 381 (8 Cir. 1966).

The stay by this Court of the Commission's orders in these matters is vacated. For the reasons contained herein, the Commission's denial of petitioners' request for waiver of the non-duplication rule will be affirmed.

KALODNER, Circuit Judge (dissenting).

I am of the opinion that this Court lacks jurisdiction under Section 405, 47 U.S.C.A. to entertain the instant petitions for judicial review of the challenged Orders of the Federal Communications Commission and that they must be dismissed for that reason.

Section 405 provides in relevant part that the filing of a petition for rehearing with the Commission is a "condition precedent to judicial review" of any order of the Commission where the party seeking such review "relies on questions of fact or *law* upon which the Commission * * * has been afforded *no* opportunity to pass." (emphasis supplied)

Here, the petitioners contend, *inter alia*, that the challenged Orders of the Commission contravene the guarantees of the First and Fifth Amendments, and that the Commission's rules, pursuant to which they were made, violate the provisions of the Federal Communications Act and the Administrative Procedure Act.

These contentions present "questions of law" which were not raised in the petitions presented to the Commission for waiver of the non-duplication provisions of Section 74.1103 of the Commission's rules for the regulation of community antenna television (CATV) systems. Moreover, the petitioners never sought a hearing before the Commission to present these questions nor did they file a petition for rehearing after the challenged Orders were issued in which the questions could have been presented to the Commission. That being so, "the Commission * * * has been afforded no opportunity to pass" upon the questions of law here presented. Since the affording of such opportunity to the Commission is a "condition precedent to judicial review" under Section 405, this Court lacks jurisdiction to entertain the instant petitions and accordingly they must be dismissed.

I must add that if jurisdiction existed I would agree with the majority's disposition.