**TOTAL TELECABLE, INC., Petitioner,**

v.

**FEDERAL COMMUNICATIONS COMMISSION and United States of America, Respondents.**

**No. 21990.**

United States Court of Appeals
Ninth Circuit.

May 9, 1969.

———◆———

Alan Raywid (argued), John P. Cole, Jr., and Roger E. Zylstra, Attys., Washington, D. C., for petitioner.

Paul Dobin & Roy R. Russo, Washington, D. C., for intervenor.

Lenore G. Ehrig (argued), F.C.C., Henry Geller, Gen. Counsel, John H. Conlin, Assoc. Gen. Counsel, Edward J. Kuhlmann, Counsel, F.C.C., John N. Mitchell, Atty. Gen. of U. S., Donald F. Turner, Asst. Atty. Gen., Howard E. Shapiro, Atty., Dept. of Justice, Washington, D. C., for respondents.

Before CHAMBERS and DUNIWAY, Circuit Judges, and BEEKS, District Judge.[*]

DUNIWAY, Circuit Judge:

Petitioner, Total Telecable, Inc. (Total) seeks review of a decision of the Federal Communications Commission.[1] It owns and operates a community antenna television (CATV) system serving Anacortes, Bellingham, Burlington, Mount Vernon, and Sedro Woolley, Washington. The Commission's order denied without a hearing Total's request for a waiver of the nonduplication requirements of the Commission's rules.[2] Total here asserts that the nonduplication rule is invalid on its face and as applied under the First and Fifth Amendments, and that if the rule is valid, the Commission's failure to provide a hearing violates pertinent statutes and the Commission's own rules.

A description of the functioning of CATV systems and a history of the Commission's regulatory activities in relation to CATV appears in United States v. Southwestern Cable Co., 1968, 392 U. S. 157 at 161–167, 88 S.Ct. 1994, 20 L. Ed.2d 1001 and will not be repeated here. That case upheld the Commission's authority to regulate CATV systems, but did not decide the questions discussed in this opinion.

## I.

### The facts.

Total's CATV systems began operating in Bellingham in 1951. There was then no local television station. It extended its CATV service to Sedro Woolley and Burlington in 1956, and to Mount Vernon and Anacortes in 1963. Its systems have a twelve channel capacity and carry four Seattle stations, one or two Tacoma stations, and KVOS–TV, which is a Bellingham, Washington-Vancouver, British Columbia station,[3] established in Bellingham two years after Total's CATV system began operating.

KVOS initiated these proceedings by requesting nonduplication protection on Total's CATV system under 47 C.F.R. § 74.1103(e)–(g). Both KVOS and KIRO–TV, one of the four Seattle stations carried by Total, are CBS affiliates. KING–TV, another Seattle station, carries one CBS program per week. Under the Commission's rules, since KVOS has a higher priority signal in Total's area than the Seattle stations, Total must provide "same day" exclusiv-

---

[*] Honorable William T. Beeks, United States District Judge, Western District of Washington, sitting by designation.

[1.] Review is authorized by § 402(a) of the Communications Act of 1934, as amended, 47 U.S.C. § 402(a).

[2.] See 47 C.F.R. § 74.1103(f), (g) (exclusivity or nonduplication rules); 47 C.F.R. § 74.1109 (waiver rules).

[3.] Total's petition indicates that its system also carries two Canadian stations, CBUT and CHAN–TV of Vancouver, British Columbia.

ity for the KVOS programs, *i. e.*, upon KVOS's request Total must refrain for one day from duplicating any program broadcast by KIRO or KING if the same program is broadcast by KVOS.

The Commission has provided procedures for submission of petitions to waive its rules. See 47 C.F.R. § 74.-1109. Immediately after the KVOS request for nonduplication, Total filed a petition for waiver of the nonduplication rule. In its petition for waiver, Total raised the constitutional challenges to the rules which it now makes before us. It also made factual allegations which indicated that KVOS was dependent for its economic viability on its Canadian and not its American viewing audience, that KVOS obtained little or no advertising revenue from Total's area, and that Total was too small to have an appreciable effect upon KVOS's audience. The Commission denied the petition for waiver without hearing, and ordered Total to comply with the nonduplication rules within 30 days.[4]

After we heard argument in this case, we entered an order deferring decision until the Supreme Court decided United States v. Southwestern Cable Co., 1968, 392 U.S. 157, 88 S.Ct. 1994, 20 L.Ed.2d 1001. We also stayed the order of the Commission pending our decision in this case. After *Southwestern Cable* was decided, further briefs were filed, and the case was resubmitted for decision.

## II.

### Free speech.

Total argues that the nonduplication rule is invalid because it is an improper restraint on free speech in violation of the First Amendment. This argument has been considered and rejected in a number of cases, and we agree with

them. See Titusville Cable TV, Inc. v. United States, 3 Cir., 1968, 404 F.2d 1187; Black Hills Video Corp. v. F.C.C., 8 Cir., 1968, 399 F.2d 65, 69; Conley Electronics Corp. v. F. C. C., 10 Cir., 1968, 394 F.2d 620; Buckeye Cablevision, Inc. v. F.C.C., 1967, 128 U.S.App. D.C. 262, 387 F.2d 220, 225.

## III.

### Due process.

Total claims that "[t]he denial of a hearing in the issuance of a proscriptive order halting a substantial part of petitioner's business is a deprivation of property without due process of law in violation of the Fifth Amendment." It relies on the fact that the Commission has assumed special regulatory control over the CATV operators and by its regulations and order has forced Total to give up a portion of its business which was developed before regulation ensued. It argues that it was at least entitled to an evidentiary hearing regarding the application of the Commission regulations before it should be forced to discontinue part of its operations.[5]

The Commission's authority to make the regulations is not questioned insofar as the regulations affect future CATV applications, nor does Total contend that "property" rights in operating as it now does could not ultimately be "taken" by Commission regulation. See Black Hills Video Corp. v. F. C. C., supra, 399 F.2d at 70, rejecting such a claim. But it does argue that the rationale of Gonzalez v. Freeman, 1964, 118 U.S.App.D.C. 180, 334 F.2d 570, and Overseas Media Corp. v. McNamara, 1967, 128 U.S.App. D.C. 48, 385 F.2d 308, requires that the Commission give it a hearing.

But a line of cases beginning with United States v. Storer Broadcasting

4. 7 F.C.C.2d 611 (1967). A petition for reconsideration and an application for stay were also denied. 8 F.C.C.2d 997 (1967).

5. The Commission did provide exceptions to certain of its rules to avoid disruption to existing service. The "grandfather" provision of 47 C.F.R. § 74.1107(d) indicates that a system in operation prior to February 16, 1966, is not subject to the distant signal rule. This "grandfather" provision does not apply to the nonduplication rule, however.

Co., 1956, 351 U.S. 192, 76 S.Ct. 763, 100 L.Ed. 1081 indicates that federal agencies have the power to promulgate rules of general application consistent with statutory authority, and that an adjudicatory hearing may be denied to those whose petitions violate the agency rule on their face. See also F. P. C. v. Texaco, Inc., 1964, 377 U.S. 33, 39, 84 S.Ct. 1105, 12 L.Ed.2d 112.

■ While *Storer* and *Texaco* have almost always been applied to situations relating to applications for new services, several cases have applied their rationale to holders of existing "certificates." See Air Line Pilots Ass'n v. Quesada, 2 Cir., 1960, 276 F.2d 892; WBEN, Inc. v. United States, 2 Cir., 1968, 396 F.2d 601, and one of our own cases, California Citizens Band Ass'n v. United States, 9 Cir., 1967, 375 F.2d 43. See also American Airlines, Inc. v. C. A. B., 1966, 123 U.S.App.D.C. 310, 359 F.2d 624.

*WBEN, California Citizens Band, American Airlines,* and *Quesada* are not dispositive, however. Each of these cases involves modification of a regulation which was already applicable to an activity. Here, we deal with a new regulation of a formerly unregulated activity. In the Permian Basin Area Rate Cases, 1968, 390 U.S. 747, 88 S.Ct. 1344, 20 L.Ed.2d 312, the Court looked at the ramifications of the Federal Power Commission's having set rates for natural gas producers by area, rather than individually. The Court dealt with a question similar to that at hand by stating:

"One additional constitutional consideration remains. The producers have urged, and certain of this Court's decisions might be understood to have suggested, that if maximum rates are jointly determined for a group or area, the members of the regulated class must, under the Constitution, be proffered opportunities either to withdraw from the regulated activity or to seek special relief from the group rates. We need not determine whether this is in every situation constitutionally imperative, for such arrange-

ments have here been provided by the Commission, and we cannot now hold them inadequate." 390 U.S. at 770, 88 S.Ct. at 1361.

Thus *Permian Basin* at least suggests that Total be given "adequate" means to seek a waiver of the new (as to it) nonduplication regulations. *cf.* C. A. B. v. Delta Air Lines, Inc., 1961, 367 U.S. 316, 81 S.Ct. 1611, 6 L.Ed.2d 869. Compare Conley Electronics Corp. v. F.C.C., supra. Since the Commission has provided for such waiver proceedings, our focus turns to the adequacy of those proceedings in this case.

## IV.

*The Commission waiver regulation.*

The Commission of its own accord has adopted "[p]rocedures applicable to petitions for waiver of the rules, additional or different requirements and rulings on complaints or disputes." See 47 C.F.R. § 74.1109. Section 74.1109(c) (1) provides:

"The petition [for waiver] shall state the relief requested and may contain alternative requests. It shall state fully and precisely all pertinent facts and considerations relied upon to demonstrate the need for the relief requested and to support a determination that a grant of such relief would serve the public interest. Factual allegations shall be supported by affidavit of a person or persons with actual knowledge of the facts, and exhibits shall be verified by the person who prepares them."

Section 74.1109(d) grants to others the opportunity to comment or oppose the petition, and Section 74.1109(e) allows the petitioner to reply. In this case, KIRO, Inc. supported the waiver; its programs would be removed from Total's cable pursuant to the rule insofar as same day duplication occurs. The local station, KVOS, opposed Total's petition.

Section 74.1109(f) prescribes the Commission's decision-making steps:

"The Commission, after consideration of the pleadings, may determine

whether the public interest would be served by the grant, in whole or in part, or denial of the request, or may issue a ruling on the complaint or dispute. The Commission may specify other procedures, such as oral argument, evidentiary hearing, or further written submissions directed to particular aspects, as it deems appropriate * * *."

Here, the "public interest" considerations upon which the Commission says that it will rely to make its determination apparently are those reflected in the Second Report and Order, *supra*. In individual nonduplication cases, the Second Report and Order indicates concern with the economic impact of the CATV operations on local station revenue and also with the relative signal strength of stations. There the Commission also determined that, as a general proposition, same-day program nonduplication would not have an unduly disruptive effect on CATV service.

It would seem, then, that a CATV operator seeking a waiver should show two things in its petition: (1) the economic effect of waiver on the local TV station, here KVOS, and (2) that in the petitioner's, here Total's, case, nonduplication will have an unduly disruptive effect on its service.

Total's showing as to economic effect of waiver upon KVOS is quite general, but it does point primarily to the asserted fact, which KVOS denies in its reply, that KVOS's revenues come almost entirely from Canada rather than from the area in which Total operates. The Commission held that the reasons for the nonduplication rule are not affected by these claimed facts.

■ Total's showing as to unduly disruptive effect upon its own service is minimal, and amounts to this (we quote from its petition):

"To fully protect KVOS–TV, Petitioner would be required to remove two Seattle stations from its systems, thereby substantially disrupting its established services, or the installation of extremely expensive switching equipment in all three systems involved herein would be required."

As to this showing, the Commission said:

"when the Commission adopted the *Second Report and Order,* it determined that same-day program exclusivity would not have an unduly disruptive effect on CATV service, and Total has failed to point to any special circumstances which would warrant a departure from this view * * *."

We agree. As the Commission points out in its brief, the petition also shows that Total receives and transmits programs from 10 stations and does considerable programming of its own. It can still carry nine of the ten stations, as it always has, with the exception of one program per week from one of them. It can continue to originate programs. There will be no denial to Total's customers of the programs that they have been receiving; they can get the programs of the tenth station from KVOS. If this must be made possible by installing switching equipment on receivers that Total serves, as Total asserts, Total makes no showing that doing so will impair its ability to do business. Literally all that it says is that to do so would be "expensive." This alone is enough to warrant denial of the petition. We express no opinion as to the Commission's disposition of the showing as to economic effect upon KVOS.

■ Like a court, an agency such as the Commission can dispose of a petition without a hearing if the facts alleged, taken as true, would not warrant the relief requested. Cases so holding, under the regulations here involved are: Community Television, Inc. v. United States, 10 Cir., 1969, 404 F.2d 771, 773; Titusville Cable TV, Inc. v. United States, *supra,* 404 F.2d at 1191–1192; Conley Electronics Corp. v. F. C. C., *supra,* 394 F.2d at 624–625; Wheeling Antenna Co. v. United States, 4 Cir., 391 F.2d 179, at 182; *cf.* Indiana Broad-

casting Corp. v. F. C. C., D.C.Cir., 407 F.2d 681. Presque Isle T.V. Co. v. United States, 1 Cir., 1967, 387 F.2d 502, is adequately distinguished in the foregoing cases.[6]

The stay heretofore granted by this court is dissolved; the Commission's decision is affirmed.

6. Total also claims rights to a hearing under the Administrative Procedure Act and Sections 309 and 312 of the Communications Act of 1934, as amended, 47 U.S.C. §§ 309, 312, relying on an analogy between Commission treatment of CATV systems and licensees. But Total is not a licensee, and the Commission's order was not a cease and desist order within Section 312. See Conley Electronics Corp. v. F.C.C., *supra*, 394 F.2d at 626; *cf.* United States v. Southwestern Cable Co., *supra*, 392 U.S. at 179–181, 88 S.Ct. 1994.