416 F.2d 238
 GREAT FALLS COMMUNITY TV CABLE CO., Inc., Petitioner,
v.
FEDERAL COMMUNICATIONS COMMISSION and United States of
America, Respondents.
Harriscope Broadcasting Corporation, Garryowen Cascade T.V.,
Inc.,* Teleprompter Transmission of Kansas, Inc.,
Intervenors.
*Substituted for Snyder & Associates by joint motion of the parties.
 No. 22393.
 United States Court of Appeals Ninth Circuit.
 July 24, 1969.
 
 John P. Cole, Jr. (argued), Roger E. Zylstra and Alan Raywid, Washington, D.C., Cole, Zylstra & Raywid, Washington, D.C., of counsel, for petitioner.
 Henry Geller (argued), Gen. Counsel, John H. Conlin, Assoc. Gen. Counsel, Joseph A. Marino, Counsel, FCC, Donald F. Turner, Asst. Atty. Gen., Howard E. Shapiro, Atty., Dept. of Justice, Washington, D.C., for respondents.
 
 
 1
 Stanley B. Cohen, Roy R. Russo, Washington, D.C., of counsel, Law Office of Marcus Cohn, Washington, D.C., for intervenor Harriscope Broadcasting Corp.
 
 
 2
 Arthur H. Schroeder, John P. Bankson, Jr., Washington, D.C., of counsel, Miller & Schroeder, Washington, D.C., for intervenor Snyder & Associates.
 
 
 3
 Midlen & Reddy, John H. Midlen, Washington, D.C., for intervenor Garrytown Cascade T.V., Inc.
 
 
 4
 Before BROWNING and ELY, Circuit Judges, and VON DER HEYDT,* District Judge.
 
 
 5
 BROWNING, Circuit Judge.
 
 
 6
 Great Falls Community TV Cable Co., Inc., filed this petition for review of an order of the Federal Communications Commission (10 F.C.C.2d 656) denying petitioner's application for waiver of the Commission's 'nonduplication' rule. 47 C.F.R. 21.712(h), 74.1103(f). This rule provides, in substance, that a CATV system operating in the basic market area of an off-the-air television station must, on request of the station, 'refrain from duplicating any program broadcast by such station on the same day as its broadcast by the station * * *'
 
 
 7
 Disposition of the petition was withheld pending the decisions in United States v. Southwestern Cable Co., 392 U.S. 157, 88 S.Ct. 1994, 20 L.Ed.2d 1001 (1968), and Total Telecable, Inc. v. FCC, 411 F.2d 639 (9th Cir. 1969). In our opinion, the holdings in these cases, and other recent decisions, require affirmance of the Commission's order.
 
 
 8
 Petitioner challenges the Commission's action on four basic grounds: (1) that the Commission has no jurisdiction over CATV systems; (2) that the nonduplication rule violates the First Amendment; (3) that the rule is an unreasonable restriction upon competition-- which the Commission is not authorized to regulate; and (4) that the Commission violated the due process clause of the Fifth Amendment and the applicable statutes by denying petitioner's waiver application without an evidentiary hearing.
 
 
 9
 Because these contentions were not raised in the administrative proceeding, the Commission argues that consideration of them is barred by 47 U.S.C. 405, which precludes judicial review of 'questions of fact or law upon which the Commission * * * has been afforded no opportunity to pass.'[1] We reject this contention as to the first three grounds; we think it is sound as to the fourth.
 
 
 10
 Section 405 reflects the general rule-- itself an aspect of the broader exhaustion of remedies doctrine-- that objections to administrative action will not be considered on judicial review unless raised before the agency. Presque Isle TV Co. v. United States, 387 F.2d 502, 504 & n. 3 (1st Cir. 1967). See generally 3 K. Davis, Administrative Law Treatise 20.06 (1958). Like most rules adjusting relations between courts and administrative agencies, the doctrine expressed in section 405 is not inflexible; it leaves room for the operation of sound judicial discretion to determine whether and to what extent judicial review of questions not raised before the agency should be denied. See L. Jaffe, Judicial Control of Administrative Action 457-458 (1965); 3 K. Davis, supra, 20.06, at 92.
 
 
 11
 Where the agency has been afforded a full opportunity to pass on an issue, courts have not always insisted on strict application of the rule. See, e.g., Titusville Cable TV Inc. v. United States, 404 F.2d 1187, 1189 (3d Cir. 1968); Wilson & Co. v. United States, 335 F.2d 788, 794 (7th Cir. 1964); Gerico Inv. Co. v. FCC, 99 U.S.App.D.C. 379, 240 F.2d 410, 411 (1957); cf. Hennesey v. SEC, 285 F.2d 511, 515 (3d Cir. 1961).
 
 
 12
 The first three issues were raised, considered, and rejected by the Commission in two separate rule-making proceedings,[2] notable for the vigor and extent of the participation by spokesmen on every side of the CATV-regulation controversy. It would therefore be wholly unreal to say that the Commission has had 'no opportunity to pass' on these issues. Moreover, in the rule-making proceedings, the Commission decided these issues, fully stating the reasons for its conclusions. Thus, we have the benefit of the Commission's expert views on the difficult problems involved.[3]
 
 
 13
 We therefore turn to the merits of these three issues.
 
 
 14
 Petitioner concedes that the decision in United States v. Southwestern Cable Co., supra, 392 U.S. 157, 88 S.Ct. 1994, 20 L.Ed.2d 1001, disposes of its attack upon the general authority of the Commission to regulate CATV systems.
 
 
 15
 In Total Telecable, Inc. v. FCC, supra, this court rejected an argument that the nonduplication rule violates the First Amendment, expressing agreement with the decisions of other circuits which had held that as a reasonable regulation in the public interest, the rule is constitutional.[4]
 
 
 16
 Petitioner calls our attention to the subsequent Supreme Court decision in Red Lion Broadcasting Co. v. FCC, 395 U.S. 367, 89 S.Ct. 1794, 23 L.Ed.2d 371 (1969).[5] There, petitioner asserts, the Court upheld the Commission's fairness doctrine on the sole ground that because of the scarcity of available frequencies, the challenged regulations furthered, rather than hindered, free speech. Petitioner argues that since CATV occupies no space on the radio spectrum, the justification for Commission action in Red Lion, and in NBC v. United States, 319 U.S. 190, 226-227, 63 S.Ct. 997, 87 L.Ed. 1344 (1949), is not available here.
 
 
 17
 In our view, nothing in Red Lion impairs the authority of Total Telecable. Although it is true that the Red Lion opinion proceeded from the scarce-frequency premise, the Court expressly declined to reach arguments justifying the doctrine on other, independent grounds. 395 U.S. at 401 n.28, 89 S.Ct. 1794.[6]
 
 
 18
 Petitioner also argues that 'the factual situation here differs slightly' from that in Total Telecable. The distinction urged is that petitioner provides its subscribers with substantial programming from an earlier, western time zone, thus enabling them to view the same program at different times on the same day and to avoid conflicts between different programs which the local stations offer only simultaneously. By requiring same-day nonduplication in these circumstances, petitioner contends, the Commission's rule limits CATV subscriber access to programs in a manner not present in Total Telecable.[7]
 
 
 19
 The Commission recognized that same-day exclusivity would work the very deprivation which petitioner asserts; it found, however, that larger public interest considerations outweighed this deprivation. First Report and Order, 38 F.C.C. at 726. See also Second Report and Order, 2 F.C.C.2d at 749.
 
 
 20
 The crux of the Commission's finding was that unrestricted CATV service, by rendering the operation of local off-the-air stations uneconomic, would impose a far greater limitation upon access to television by the public as a whole than would result from the proposed rule. First Report and Order, 38 F.C.C. at 700. Viewers in outlying areas, where the cost of running a CATV cable is prohibitive, and viewers unable, or unwilling, to pay for television service via cable, would be completely deprived of television service. Id. at 699. Moreover, the Commission found that the demise of local stations would close an important channel for local community self-expression (id.), and would doom the existing commercial television system, which is deliberately 'predicated upon the social desirability of having a large number of local outlets, with diversity of control over disseminating sources, rather than a few stations serving vast areas and populations.' Id. at 699-700, citing, inter alia, the First Amendment discussion in Associated Press v. United States, 326 U.S. 1, 20, 65 S.Ct. 1416, 89 L.Ed. 2013 (1945). In addition, the Commission feared that unregulated CATV growth would impede the development of UHF television service. Id. at 711-13.
 
 
 21
 In contrast to the reasonably anticipated harm to the entire viewing public from unrestricted CATV operations, the Commission found that the restriction which a same-day nonduplication rule would impose upon CATV subscribers would be minimal. The regulation would impose no control on program content. Subscribers would not be deprived of the opportunity of seeing a particular program, but only of the choice of seeing that program at different hours, or twice on the same day. See Robinson, supra, note 4, at 95-96.
 
 
 22
 Petitioner has failed to persuade us that the Commission's judgment was unreasonable. The interests which the Commission reasonably sought to serve in promulgating the same-day nonduplication rule are the dominant First Amendment interests identified in Red Lion. As the Court said, 'It is the right of the public to receive suitable access to social, political, esthetic, moral, and other ideas and experiences which is crucial' under the First Amendment. 395 U.S. at 390, 89 S.Ct. at 1807.
 
 
 23
 The third issue requires only brief comment. The propriety of the Commission's concern for the impact of competition from CATV upon off-the-air broadcasters, and the appropriateness of the Commission's response, have been uniformly sustained in decisions by other Courts of Appeals, with which we agree. E.g., Titusville Cable TV, Inc. v. United States, 404 F.2d 1187, 1190 (3d Cir.1968); Conley Electronics Corp. v. FCC, 394 F.2d 620, 623-624 (10th Cir. 1968); see Community Television, Inc. v. United States, 404 F.2d 771, 773 (10th Cir.1969); Wheeling Antenna Co. v. United States, 391 F.2d 179, 183 (4th Cir.1968); Carter Mountain Transmission Corp. v. FCC, 116 U.S.App.D.C. 93, 321 F.2d 359, 362-363 (1963); cf. FCC v. Sanders Bros. Radio Station, 309 U.S. 470, 475-476, 60 S.Ct. 693, 84 L.Ed. 869 (1940).
 
 
 24
 The fourth issue raised by petitioner is whether the Commission's denial of a waiver of the rule without an evidentiary hearing violated due process or applicable statutes.
 
 
 25
 In Total Telecable, we held that the Commission could constitutionally adopt the nonduplication regulations and apply them to existing CATV systems without individual hearings so long as adequate means were provided for seeking a waiver.[8]
 
 
 26
 Our decision in Total Telecable makes clear that whether due process requires a hearing on a given waiver petition depends upon the facts of the particular case, as reflected in the petition. Petitioner did not assert a due process right to a hearing before the agency; it did not even request that a hearing be held. Obviously, the Commission has had no opportunity to consider the question which petitioner now asks us to decide. See Florida Gulf Coast Broadcasters, Inc. v. FCC, 122 U.S.App.D.C. 250, 352 F.2d 726, 727-728 (1965); Albertson v. FCC, 100 U.S.App.D.C. 103, 243 F.2d 209, 211-212 (1957).
 
 
 27
 The Commission's regulations give notice that an evidentiary hearing will be ordered if the pleadings indicate that course to be appropriate.[9] It would obviously facilitate the work of an overburdened Commission if the possible need for a hearing were called to its attention by a specific request in the initial application, or, in any event, in a petition for reconsideration. The Commission's disposition of the request would call for at least some measure of discretion and a considerable application of special expertise. Cf. McKart v. United States, 395 U.S. 185, 198, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969). And, it would contribute to rational judicial review by providing occasion for the Commission to state the grounds for its action if the request were rejected.
 
 
 28
 On the other hand, the burden imposed upon petitioner by the denial of review here will not be severe. Cf. McKart v. United States, supra, at 197, 89 S.Ct. 1657. Nothing in the Commission's regulations appears to bar the filing of a new application for waiver with a request for hearing based upon the factual situation as it has developed during the three years which have elapsed since petitioner made its concluding submission to the Commission in this proceeding.
 
 
 29
 Finally, petitioner's avowed reasons for failing to request a hearing are singularly unimpressive. It states that it had 'no forewarning' that the Commission would deny the petition without hearing. But that possibility was implicit in the regulations.[10] It states that it did not file a motion for reconsideration requesting a hearing because the Commission in the past has denied interim relief during the pendency of such motions, and had denied such motions after substantial delay. In substance, petitioner seeks to justify immediate recourse to the court on the ground that this procedure was more likely to result in a stay.[11]
 
 
 30
 In the circumstances presented here we decline to review the merits of petitioner's contention that the Commission should have ordered an evidentiary hearing on the allegations of its petition.
 
 
 31
 The preliminary injunction heretofore granted is dissolved; the Commission's decision is affirmed.
 
 
 
 *
 Honorable James A. von der Heydt, United States District Court for the District of Alaska, sitting by designation
 
 
 [1]
 47 U.S.C. 405 provides:
 'The filing of a petition for rehearing shall not be a condition precedent to judicial review of any * * * order, decision, report, or action (of the Commission), except where the party seeking such review * * * relies on questions of fact or law upon which the Commission * * * has been afforded no opportunity to pass.'
 The Commission appears to agree that the statute is satisfied if the issue sought to be reviewed is raised at some stage of the agency proceedings and courts have so construed the section. E.g., Conley Electronics Corp. v. FCC, 394 F.2d 620, 624 (10th Cir. 1968) (alternative holding); Presque Isle TV Co. v. United States, 387 F.2d 502, 504-506 (1st Cir. 1967).
 
 
 [2]
 Consideration of Commission Jurisdiction: Second Report and Order, 2 F.C.C.2d 725, 728-34 (1966); First Report and Order, 38 F.C.C. 683, 697-701 (1965). First Amendment: Reconsideration of the Second Report and Order, 8 P & F Radio Reg.2d 1677, 1681-82 (1967); First Report and Order, 38 F.C.C. at 687 n. 5. The nature and extent of the competition between CATV systems and off-the-air broadcasters and the question of how, consistently with the Commission's statutory powers and duties, these competitive conditions should be adjusted, were central to the rule-making proceedings. E.g., Second Report and Order, 2 F.C.C.2d at 735-38; First Report and Order, 38 F.C.C. at 697-715
 
 
 [3]
 The reising of an objection in the agency proceeding is not always excused because prior agency decisions would have required overruling it. In United States v. L.A. Tucker Truck Lines, Inc., 344 U.S. 33, 37, 73 S.Ct. 67, 69, 97 L.Ed. 54 (1952), the Court said:
 'Repetition of the objection in (a large number of like cases) * * * might lead to a change of policy, or, if it did not, the Commission would at least be put on notice of the accumulating risk of wholesale reversals being incurred by its persistence.'
 In the unusual circumstances of these proceedings, however, these considerations have minimal weight. The Commission proceeded deliberately and thoroughly before promulgating the nonduplication rules in the face of objections substantially the same as those which petitioner urges here. See note 2 supra. The rule-making proceedings extended over a period of several years, ending only recently. Related rulemaking proceedings, in which changes in the commission's position may be accomplished, are still pending. See generally, Note, The FCC's Proposed CATV Regulations, 5 Colum.L.J. & Soc.Prob. 169 (1969). The courts have uniformly rejected the contentions in question. In combination, these facts render wholly unrealistic the suggestion that raising these issues in individual adjudicatory proceedings could significantly contribute toward inducing the Commission to change its view.
 
 
 [4]
 The decisions relied on were Titusville Cable TV, Inc. v. United States, 404 F.2d 1187, 1189-1190 (3d Cir. 1968), Black Hills Video Corp. v. FCC, 399 F.2d 65, 69 (8th Cir. 1968), Conley Electronics Corp. v. FCC, 394 F.2d 620, 624 (10th Cir. 1968); Buckeye Cablevision, Inc. v. FCC, 128 U.S.App.D.C. 262, 387 F.2d 220, 225 (1967). See also Idaho Microwave, Inc. v. FCC, 122 U.S.App.D.C. 253, 352 F.2d 729, 733-734 (D.C. Cir. 1965), Carter Mountain Transmission Corp. v. FCC, 116 U.S.App.D.C. 93, 321 F.2d 359, 364 (1963). The rationale of these decisions has been questioned, although the critic deems CATV regulation constitutional on other grounds. See Robinson, The FCC and the First Amendment, 52 Minn.L.Rev. 67, 88-96 (1967)
 
 
 [5]
 Petitioner's motion to file a supplemental brief discussing Red Lion is hereby granted
 
 
 [6]
 Petitioner asserts that under Red Lion 'mere economic protection' of the broadcasting industry is not an adequate constitutional basis for CATV regulation. One argument that the Court declined to reach, however, was that the fairness doctrine could be upheld on the basis of 'economic scarity in the sense that the Commission could or does * * * license no more stations than the market will support.' In any event, although economic protection of broadcasting is a necessary incident of CATV regulation, it was not the Commission's ultimate goal. See text following note 7, infra
 
 
 [7]
 The rights asserted by this argument are not petitioner's, but those of its subscribers; a question thus exists whether petitioner has standing to seek relief on this ground. See, e.g., Alderman v. United States, 394 U.S. 165, 174, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969), Tileston v. Ullman, 318 U.S. 44, 46, 63 S.Ct. 493, 87 L.Ed. 603 (1943), Carter Mountain Transmission Corp. v. FCC, 116 U.S.App.D.C. 93, 321 F.2d 359, 364 (1963), C. Wright, Federal Courts 13, at 38-39 (1963). Compare NAACP v. Alabama, 357 U.S. 449, 458-460, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958). However, because this aspect of standing is 'only a rule of practice,' Barrows v. Jackson, 346 U.S. 249, 257, 73 S.Ct. 1031, 97 L.Ed. 1586 (1953), and the question was not briefed or argued, we reach the merits of the issue
 
 
 [8]
 We also rejected an argument that the Communications Act provides a right to a hearing, 411 F.2d at 639 n. 6
 
 
 [9]
 47 C.F.R. 74.1109(f) provides that 'the Commission, after consideration of the pleadings * * * may specify other procedures, such as oral argument, evidentiary hearing, or further written submissions * * * as it deems appropriate.'
 
 
 [10]
 See note 9. In the Second Report and Order, which accompanied the regulation, the Commission stated that, in applying the regulations, it would, 'where possible, promptly dispose of the matter on the basis of * * * written submissions.' 2 F.C.C.2d at 764
 
 
 [11]
 This court granted petitioner a temporary stay of the Commission's order on December 7, 1967. A temporary injunction was issued January 30, 1968, pending final determination of the petition for review