428 F.2d 672
 CABLE TV OF SANTA BARBARA, INC., a corporation, and Cable TV
of Santa Barbara County, Inc., a corporation, Petitioners,
v.
FEDERAL COMMUNICATIONS COMMISSION and United States of
America, Respondents, Central Coast Broadcasters,
Inc., Key Television, Inc., Intervenors.
 No. 24827.
 United States Court of Appeals, Ninth Circuit.
 June 8, 1970.
 
 Thomas N. Dowd (argued), James J. Freeman, of Pierson, Ball & Dowd,
 Thomas N. Dowd (argued), James J. Washington, D.C., Sidney Wall of O'Melveny & Myers, Los Angeles, Cal., for petitioners.
 Jack P. Blume (argued), Howard Jay Braun, of Fly, Shuebruk, Blume & Gaguine, Washington, D.C., Schramm, Raddue & Seed, Santa Barbara, Cal., for Key Television, Inc., Intervenor.
 Richard Hildreth (argued), Marvin Rosenberg, of Fletcher, Heald, Rowell, Kenehan & Hildreth, Washington, D.C., Robert Raymer, and R. Berry Churton of Cooper, White & Cooper, of San Francisco, Cal., for Central Coast Broadcasters, Inc., intervenor.
 Katrina Renouf (argued), Henry Geller, John H. Conlin, F.C.C., Gregory B. Hovendon, Richard W. McLaren, Asst. Atty. Gen., Howard Shapiro, Dept. of Justice, Washington, D.C., for respondents.
 Before HAMLEY and ELY, Circuit Judges, and GOODWIN, District Judge.*
 HAMLEY, Circuit Judge:
 
 
 1
 This matter is before us on the petition of Cable TV of Santa Barbara, Inc, and Cable TV of Santa Barbara County, Inc. (collectively Cable TV) to review a Federal Communications Commission (Commission) memorandum order and opinion adopted August 13, 1969. The Commission order and opinion is reported in Central Coast Broadcasters, Inc., 18 F.C.C.2d 886 (1969).[1] Central Coast Broadcasters, Inc. (KCOY), which instituted the Commission proceeding, has intervened in the court in support of the FCC order and opinion. Key Television, Inc. (KEYT), which intervened on the side of Cable TV in the Commission proceedings, has intervened in this court in support of the petition to review.
 
 
 2
 Cable TV operates a cable television system serving the city of Santa Barbara and some contiguous portions of Santa Barbara County. This system provides the signals of fourteen California television stations to approximately twenty thousand subscribers, estimated at sixty thousand viewers. The stations carried include KNXT-TV (CBS) and KNBC-TV (NBC), both of Los Angeles, and KEYT.
 
 
 3
 KEYT (ABC) is the licensee of the only television station in Santa Barbara, California. KCOY, primarily a CBS outlet but with limited NBC affiliation, is the only licensed television station in Santa Maria, California, located in northern Santa Barbara County. Santa Barbara and Santa Maria are fifty-seven miles apart and are separated by the Santa Ynez mountains. KCOY's transmission tower is located near Santa Maria, and, because of the intervening mountains, that station's only access to Santa Barbara is by means of Cable TV's system. KEYT, however, can be received in Santa Maria off-the-air, because that station's transmission tower is located on one of the Santa Ynez mountains.
 
 
 4
 The Los Angeles stations carried on Cable TV are also viewable off-the-air in the city of Santa Barbara, although the distance between the two cities in some ninety miles. Off-the-air, however, the Los Angeles stations give Santa Barbara only a grade B signal, which is inferior to the signal received in Santa Barbara over Cable TV facilities.
 
 
 5
 When KCOY commenced operations in 1964, it requested and obtained carriage on Cable TV's system. Then, in February, 1968, after a change in the station's management, KCOY asked Cable TV to afford it nonduplication protection.[2] In response, Cable TV commenced a 'tone-switching' operation on September 15, 1968. Under this procedure, Cable TV continued to broadcast KNXT and KNBC signals from Los Angeles simultaneously with KCOY's signal. However, whenever there were duplicating network programs, the non-network commercials and announcements of KCOY were inserted in place of those transmitted by the Los Angeles stations. As a result, KCOY's signals not only avoided duplication by the Los Angeles stations but received double coverage, since they appeared on two of Cable TV's channels during periods of network program duplication.
 
 
 6
 Within two months Cable TV notified KCOY of its intent to terminate the 'temporary' tone-switching agreement, as Cable TV subsequently described it. Cable TV gave two reasons for this cessation: because the operation was undertaken on the mistaken assumption that KCOY would be allowed by the Commission to move its transmitter to provide a better signal; and because of the volume of subscriber complaints about the deterioration in service caused by tone-switching. KCOY responded immediately by filing suit in the Superior Court for the County of Santa Barbara to prohibit Cable TV from breaching its 'contract' to provide KCOY with exclusivity protection. However, on May 19, 1969, the state court entered a judgment holding that Cable TV had made 'no contract or agreement' to provide KCOY with nonduplication protection.
 
 
 7
 KCOY then petitioned the Commission for relief, asserting that, despite the holding of the state court, there was a private agreement between KCOY and Cable TV enforceable under Paragraphs 49 and 56 of the Second Report and Order, 2 F.C.C.2d 725 (1966). Alternatively, KCOY contended that it was entitled to non-duplication under the requirements of 47 C.F.R. 74.1103 (1969). In its order of August 13, 1969, here under review, the Commission declined to grant relief on either of these grounds. The Commission nevertheless granted KCOY non-duplication protection under 47 C.F.R. 74.1109 (1969).
 
 
 8
 The Commission gave the following reasons for granting such relief:
 
 
 9
 'We * * * believe that Cable TV should be required to afford program exclusivity to KCOY-TV, since that station's predicted grade A contour include Santa Barbara, its signal is being carried by Cable TV, and non-duplication protection would, we find, affirmatively serve the public interest. 'We find that in face of KCOY-TV's substantial losses over the past years, affording non-duplication protection would serve the public interest by enhancing the ability of this station to obtain revenues and thus to continue its needed local service to the Santa Maria area.
 
 
 10
 'In short, we find that requiring Cable TV to afford KCOY-TV program exclusivity vis-a-vis the KNBC and KNXT signals will further the allocations policies (discussed in Shen-Heights (11 F.C.C.2d 814)), as well as the policies underlying the Second Report and Order (2 F.C.C.2d 725), and that the public interest calls for this requirement. * * *' 18 F.C.C.2d at 887, 888.[3]
 
 
 11
 Commission reliance upon material outside the record
 
 
 12
 Cable TV and KEYT urge several reasons why the order of August 13th should be overturned. Among them is that one of the grounds cited by the Commission in support of its decision is based upon material outside the record.
 
 
 13
 In the portion of the Commission's opinion quoted above reference is made to KCOY's 'substantial losses over the past years * * *.' To buttress this statement, the Commission added a footnote stating that '* * * since its inception, KCOY-TV has reported substantial losses to the Commission * * *.' The footnote then sets out the figures for KCOY's operating losses for the years 1964-1968. 18 F.C.C.2d at 888, note 2. These loss figures were taken from the annual confidential financial reports (form 324) that all broadcast stations must file with the Commission. Cable TV and KEYT claim that they have not been given an adequate opportunity to rebut this information.
 
 
 14
 While KCOY's losses may well be 'adjudicative,' they must also be 'disputed' and 'critical' facts in order to entitle Cable TV and KEYT to an evidentiary hearing. 2 K. Davis, Administrative Law Treatise, 15.10 at 403 (1958).[4] In our view, the losses in question did not, on this record, constitute either 'disputed' or 'critical' facts.
 
 
 15
 Cable TV and KEYT have had repeated opportunities to dispute the existence of KCOY's losses, but they have never done so in any effective fashion. For example, KCOY put Cable TV and KEYT on notice of this issue in its original petition for nonduplication protection filed with the Commission. Yet neither Cable TV nor KEYT in their oppositions to this petition disputed the losses. Furthermore, in their petitions for stay of the non-duplication order, Cable TV and KEYT offered no evidence refuting KCOY's losses.[5]
 
 
 16
 In addition, the existence of the KCOY losses is probably not a 'critical' underpinning of the nonduplication order, because the Commission has given independent reasons for enhancing KCOY's position in Santa Barbara. In its latest opinion in the FCC Docket No. 16430 proceeding, the Commission spoke of an overall 'allocations plan for Santa Barbara County,' 21 F.C.C.2d at 364, and of the frustration of that plan prior to the August 13 nonduplication order, because KCOY 'has never been able to operate, as intended, as a third competitive service in the area.' Id. at 265.[6] Even if KCOY had no losses, we are not convinced that the Commission would have refused to order nonduplication. The Commission has expressed its desire to maintain KCOY's local Santa Maria ties while allowing it access to Santa Barbara as part of a general scheme for the entire county.
 
 
 17
 For the reasons stated above we hold that the August 13th order should not be reversed because of the reliance therein on KCOY loss figures contained in confidential financial reports.
 
 
 18
 Relationship between allocation policies and nonduplication protection
 
 
 19
 Cable TV and KEYT argue that the 'allocations policies' cited in the August 13th order do not accord with the nonduplication protection granted to KCOY. According to their brief, 'an attempt to relate the Commission's allocations policies to the instant situation demonstrates that those policies, far from supporting the Commission's action, actually require reversal.' We assume, as do Cable TV and KEYT, that the 'allocations policies' mentioned by the Commission are those quoted in Sixth Report on Television Allocations, 1 Pike & Fischer, R.R. 'Reports 1947-1952,' Part III, 91:601, 91:620 (1952).[7]
 
 
 20
 Counsel for the Commission failed to respond to this argument. The omission is understandable, because the attempt of Cable TV and KEYT to relate the Commission's allocations policies to the circumstances of this case is very difficult to follow and is, perhaps, internally inconsistent. For example, at one point in their brief Cable TV and KEYT argue that the nonduplication order must be rejected as the 'latest attempt to make KCOY-TV a de facto Santa Barbara station.' KEYT is at present the only station located in Santa Barbara. But, at a later point in their brief they assert that 'the conclusion is inescapable that the Commission's action will * * * probably prevent attainment of the fourth priority, a second station for Santa Barbara.'
 
 
 21
 Given the confused nature of the argument on this point and in light of the deference we owe the Commission's judgment on matters such as allocations policies, we hold that Cable TV and KEYT have failed to meet their burden of proving error. Probably the Commission should have done better than summarily referring to 'allocations policies' and to previous proceedings, rather than fully articulating its position in a ground-breaking case such as this one. However, Cable TV and KEYT have not convinced us that the Commission has ignored any preexisting set of allocations policies.
 
 
 22
 Inapplicability of section 74.1103 of Commission rules
 
 
 23
 Cable TV and KEYT challenge the Commission's reliance on what the latter refers to in the August 13th order as 'the policies underlying the Second Report and Order * * *.' They argue that the nonduplication provisions of section 74.1103 of the Commission's rules, 47 C.F.R. 74.1103 (1969), are keyed to actual off-the-air service, which KCOY does not provide to Santa Barbara. Thus, according to Cable TV and KEYT, neither rule 74.1103 nor the policies underlying that rule (as discussed in the Second Report) are applicable in the instant case.
 
 
 24
 It may well be that in some of its recent actions the Commission has extended section 74.1103 beyond the scope originally announced in the Second Report and Order. See Community Service, Inc. v. United States, 418 F.2d 709, 719 et seq. (6th Cir. 1969). But that problem does not confront us here, since the Commission expressly relied on section 74.1109, 47 C.F.R. 74.1109 (1969), rather than section 74.1103 in promulgating its nonduplication directive in this case. We have no reason to believe that the 'policies underlying the Second Report and Order * * *' to which the Commission referred in its August 13th order were not the policy statements made in the Second Report about the need for a flexible ad hoc provision such as section 74.1109. See 2 F.C.C.2d at 746 (par. 49), 749 (par. 56), and 764 (par. 97).
 
 The scope of section 74.1103 and 74.1109
 
 25
 In addition to challenging the grounds cited in the nonduplication order, Cable TV and KEYT also assert that the action taken by the Commission in this case amounts to a rewrite of section 74.1103 by requiring nonduplication protection in the face of a 'full engineering showing' that KCOY's actual contours do not cover the CATV community. The order, according to Cable TV and KEYT, marks the culmination of a line of cases tentatively set in motion by Bluefield Television Cable, 10 F.C.C.2d 731 (1967) and firmly launched by Shen-Heights TV Association, 11 F.C.C.2d 814 (1968), which have switched the emphasis of section 74.1103 from actual off-the-air service to CATV communities to a 'strict enforcement of a station's predicted contours. * * *' Thus, the argument concludes, the Commission has modified one of its rules 'not by the straightforward method of amending its rules but by adjudication in individual cases * * *,' a course which assertedly denies Cable TV and KEYT the procedural safeguards of the Administrative Procedure Act, 5 U.S.C. 533.
 
 
 26
 The order under review does not, however, represent an amendment or overbroad reading of section 74.1103, because the order is not based upon that section of the regulations. Instead, the order is based on section 74.1109. As the Commission said in its August 13th order:
 
 
 27
 'We have ordered Cable TV to afford non-duplication protection to KCOY-TV not under 74.1103, but under the provisions of Section 74.1109 which permits the Commission to order procedures responsive to extraordinary situations such as the one presented by KCOY-TV's petition.' 20 F.C.C.2d at 136.
 
 
 28
 Cable TV and KEYT question whether the Commission action complained of falls within the scope of section 74.1109.
 
 
 29
 The circumstances under which television stations are entitled to program exclusivity are set forth in considerable detail in section 74.1103(e). In view of this fact it is questionable whether some general regulation pertaining to matters not specifically dealt with in other regulations should be construed in such manner as to enable the Commission to order pragram exclusivity under circumstances not contemplated by section 74.1103(e).
 
 
 30
 But section 74.1109, under which the Commission acted, is not a general regulation of this kind. It is specifically designed as a means whereby the Commission may, on an ad hoc basis and where unusual circumstances warrant, proceed in a manner inconsistent with, or not covered by, other regulations, including the program exclusivity provisions of section 74.1103(e). Consistent with the title of section 74.1109, paragraph (a) thereof reads, in part:
 
 
 31
 '(a) Upon petition by a * * * licensee of a television broadcast * * * station, * * * the Commission may * * * impose additional or different requirements. * * *' 47 C.F.R. 74.1109(a).
 
 
 32
 If this seemingly plain meaning of section 74.1109 needs corroboration it is to be found in the Second Report and Order, Dockets Nos. 14895 and 15233, 2 F.C.C.2d 725 (1966), promulgating the rule in question. In particular, the Commission cites: paragraph 49, where the Commission noted that ad hoc consideration would be given to local stations seeking a greater degree of protection than provided by the rules, 2 F.C.C.2d at 746; paragraph 56, where the Commission stated 'we will consider requests by local stations and CATV systems for different treatment on an ad hoc basis * * *' Id. at 749; and paragraph 97, where the Commission stressed the need for 'an adequate procedure for seeking additional affirmative relief or different treatment.' Id. at 764.
 
 
 33
 These statements mention almost nothing about the possible nature of the ad hoc remedies the Commission might fashion. However, the rapid growth and uncertain impact of CATV, noted in both the First Report (38 F.C.C. at 688-715) and the Second Report (2 F.C.C.2d at 734-745), clearly created a need for flexibility on the part of the Commission, and section 74.1109 represents an attempt to provide just that.
 
 
 34
 Cable TV and KEYT do not question the validity of section 74.1109 (opening brief, page 9). It is nevertheless possible to assume circumstances under which section 74.1109 might be applied in a manner which would offend due process. For example, were the Commission to rely upon section 74.1109 as authority to impose some requirement concerning which the aggrieved party had no notice or opportunity to be heard, there would be an unconstitutional application of that section. Nothing like that occurred here, and no such contention is made. Cable TV and KEYT at all times knew that a prime issue in the case was whether KCOY should be granted nonduplication in Santa Barbara.
 
 
 35
 It is true that the primary theme of KCOY's petition to the Commission, initiating this matter, was that it was entitled to nonduplication protection under section 74.1103. But it is also true that, in the first sentence of its petition, KCOY stated that it was proceeding 'pursuant to Section 74.1109 of the Commission's Rules and Regulations, and Paragraphs 49 and 56 of the Second Report and Order * * *,' summarized above.
 
 
 36
 In view of KCOY's express invocation of section 74.1109 it cannot be said that Cable TV and KEYT were surprised by the Commission's reliance upon that section. Moreover, Cable TV itself invoked section 74.1109. While Cable TV argued before the Commission that section 74.1103(a) does not empower the Commission to grant the relief requested by KCOY, it also argued that, even if it did, Cable TV should be granted a waiver. This could only be done pursuant to section 74.1109. In that connection, Cable TV urged that the 'situation here is unique when compared with the facts presented in the routine 1103 waiver petition proceedings. * * *' If this uniqueness entitled Cable TV to invoke section 74.1109, it also warranted KCOY in calling that regulation into play.
 
 
 37
 More important than the fact that Cable TV and KEYT were not surprised by the Commission's reliance upon section 74.1109, is the fact that such reliance did not in any way impede or impair a full presentation of their side of the case in the agency proceedings, or the Commission's full consideration thereof. Thus we think Cable TV and KEYT cannot claim lack of notice, or prejudice, by reason of the action of the Commission in resting its order upon section 74.1109.
 
 
 38
 After considering the literal wording of the rule, the reference thereto in the Second Report and Order, and the Commission's need for flexibility in dealing with a burgeoning new problem, we conclude that the Commission has the power to grant nonduplication relief under section 74.1109.
 
 
 39
 But while we hold that section 74.1109 may be used to order nonduplication, we stress the need for clarity on the part of the Commission when it acts in such an ad hoc fashion.[8] As will be seen when we turn to the next group of agruments by petitioners, the Commission's August 13th order is exceedingly cryptic and summary in its statements of reasons for the relief granted and in its discussion of the potential impact of its order on interested parties. Both our own needs in fulfilling our duty to review and the needs of litigants, present and future, require more.
 
 
 40
 Impact of nonduplication on Cable TV and KEYT
 
 
 41
 Cable TV and KEYT also argue that in reaching its decision to grant KCOY nonduplication protection, the Commission failed to weigh the detrimental impact this order will have upon them. This, they contend, renders the Commission's action arbitrary and capricious. Alternatively, Cable TV and KEYT assert that if the Commission in fact weighed the impact of its order upon them, it has failed to express its conclusions in this respect, and the order must be reversed for that reason.
 
 
 42
 With regard to the impact of the order on KEYT, it is argued that the Commission failed to consider KEYT's evidence that requiring nonduplication for KCOY would materially worsen KEYT's allegedly marginal economic position by introducing a new competitive force into the Santa Barbara market. This, they assert, would detract from the public interest, because it would curtail the scope of KEYT's broadcast activities.
 
 
 43
 A threshold matter must be discussed before turning to the merits of this claim. KCOY notes that KEYT did not raise the economic impact issue before the Commission in advance of the August 13th order. KEYT explains this omission by claiming that due to the theories advanced by KCOY in its petition seeking nonduplication relief, 'KEYT had no reason to further complicate the proceeding by raising the impact issue.'
 
 
 44
 This amounts to a contention that KEYT had no warning that the Commission might grant the type of relief that it did. However, in its original petition, KCOY asked for section 74.1103 relief in the alternative, and, if the Commission had chosen that course instead of section 74.1109, it might have ordered Cable TV to provide the same type of protection that is at issue in this case. Thus we find KEYT's explanation for its failure to raise this issue in the administrative proceedings unconvincing.
 
 
 45
 For this reason the Commission might properly have ignored KEYT's claim of adverse economic impact. But it did not, for it stated:
 
 
 46
 'The arguments advanced by KEYT in support of Cable TV's requested stay are based upon an assertion of irreparable harm to KEYT, which was found to be unsupported in the decision in docket No. 16430, where KEYT advanced a virtually identical thesis, and is unsupported by the present record.' 20 F.C.C.2d at 135, note 3.[9]
 
 
 47
 As Cable TV and KEYT have emphasized on this appeal, the Commission's treatment of the KEYT economic impact issue amounts to little more than a summary rejection. But our own review of KEYT's allegations before the Commission convinces us that this issue deserved nothing more. Under the heading 'Santa Barbara South is a Highly Competitive Market,' for example, KEYT described itself as a 'marginal station' because of the high operating costs it must incur in order to compete with 'major market stations' (from Los Angeles and San Diego) that reach Santa Barbara. Yet under the August 13th nonduplication order the influence of some of these 'major' southern California stations will necessarily be reduced.
 
 
 48
 KEYT also claimed that it was adversely affected during the 'tone-switching' period, when KCOY's station identification and commercials were appearing on more than one Cable TV channel. KEYT asserted that its audience share fell during that period. It is difficult to see how there could have been any causal connection between these two circumstances, since Cable TV subscribers were receiving precisely the same amount of CBS and NBC network programming after 'tone-switching' commenced, albeit with a newly instituted uniformity in station identifications. In fact, taking into account that KEYT is the exclusive ABC affiliate in Santa Barbara and on the cable, the result should have been the opposite. If, as Cable TV and KEYT allege, the tone-switching procedure incensed 'hundreds' of Cable TV subscribers, they presumably would have turned to KEYT's ABC programs.
 
 
 49
 In any case, KEYT admitted that its profit margin did not fall during this initial period of KCOY exclusivity. KEYT claimed that it required 'sheer dint of effort to maintain a relative constancy of net income' while tone-switching was in effect. However, extra effort is quite commonly a by-product of increased competition (assuming, with KEYT, that the latter existed), and there is no allegation that such redoubled efforts detract from the public interest.
 
 
 50
 Other examples of the unconvincing nature of KEYT's economic impact arguments could be cited.[10] We conclude that KEYT's economic impact argument received all of the attention to which it was entitled. Accordingly, we hold that the Commission order should not be reversed for failure to articulate the Commission's conclusions on this point to a greater extent than is evidenced by the order.
 
 
 51
 Insofar as Cable TV raises the possibility of detrimental impact to itself, we also find no basis for reversal. The argument cannot be distinguished from contentions we have dismissed in earlier nonduplication cases. Port Angeles Telecable, Inc. v. FCC, 416 F.2d 243, 245-246 (9th Cir. 1969); Total Telecable, Inc. v. FCC, 411 F.2d 639, 643 (9th Cir. 1969).
 
 KCOY signal strength problem
 
 52
 On the other hand, we do find disturbing the lack of Commission discussion of the contention that the nonduplication order allegedly will force sixty thousand Cable TV viewers in Santa Barbara to accept inferior CBS and NBC network signals when nonduplication is in effect.[11]
 
 
 53
 This is the type of issue concerning which we believe the Commission should have made a full exposition of the pertinent facts and of the reasons for its conclusions. Without such a disclosure of its findings of fact and legal conclusions on this critical matter, we are unable to perform properly our duty of judicial review.[12] In so holding, we especially have in mind the recognized principle that an administrative order must stand on its own recitals of facts and reasons and cannot rely for support upon post-hoc rationalizations by counsel which may or may not accord with the agency's findings and conclusions at the time the order was entered.[13]
 
 
 54
 The references to the strength of the KCOY signal at Cable TV's headend in the August 13th order, and in the October 15th refusal to grant a stay, are minimal. Nowhere does the Commission state explicitly that it believes the signal to be adequate or at least believes that it is technically feasible to upgrade the signal. In the August 13th order, the Commission stated:
 
 
 55
 'The CATV systems are carrying KCOY-TV, which is of course considerable help (and which, we note, renders moot any question of inordinate expense to obtain the signal of KCOY-TV).' TV).' 18 F.C.C.2d at 888.
 
 
 56
 In the October 15th refusal to grant a stay, the Commission added the following elaboration:
 
 
 57
 'Cable TV's claim of irreparable harm is further diminished by the fact that to afford program protection to station KCOY-TV would require no additional expenditure, since that station is presently carried on Cable TV and has been since 1964 and since the system already possesses switching equipment capable of accommodating our requirements as to KCOY-TV. * * *' 20 F.C.C.2d at 136.[14]
 
 
 58
 These recitals in the August 13th order and the October 15th refusal to grant a stay do not, in our opinion, adequately deal with the possibility that nonduplication will force an unacceptably inferior KCOY signal on Cable TV subscribers. None of this language, including the proviso quoted in note 14 above, indicates that the Commission has made its own findings and conclusions on the possibility of an unacceptably degraded KCOY signal.[15]
 
 Right to a hearing
 
 59
 Cable TV and KEYT contend that the Commission erred in promulgating its nonduplication order without holding an evidentiary hearing on three allegedly critical issues of fact: (1) the 'serious degradation of service' to Cable TV subscribers due to the inferior quality of the KCOY signal; (2) the detrimental impact to KEYT; and (3) the real cause and extent of the KCOY losses. As to (2) and (3) we have already indicated why the underlying arguments relevant to these issues of fact are not meritorious. It follows, as we said in Total Telecable, Inc. v. FCC, 411 F.2d 639, 643 (9th Cir. 1969):
 
 
 60
 'Like a court, an agency such as the Commission can dispose of a petition without a hearing if the facts alleged, taken as true, would not warrant the relief granted.'
 
 
 61
 As to the signal strength problem, however, we have stated above that there is merit in the position of Cable TV and KEYT. But we are confronted with the argument that the right to an evidentiary hearing on this issue has been waived.
 
 
 62
 The right to a hearing in a section 74.1109 proceeding[16] may be lost if not requested in the initial pleading filed with the Commission or, in any event, in a petition for reconsideration. Great Falls Community TV Cable Co. v. FCC, 416 F.2d 238, 242 (9th Cir. 1969). In this case neither Cable TV nor KEYT requested a hearing in their initial oppositions to KCOY's petition seeking nonduplication protection. Nor did they file a request for reconsideration, although Cable TV did file a petition for stay of the nonduplication order pending judicial review, which was supported by KEYT. But, in its petition for a stay Cable TV expressly declined to request a hearing.[17] In view of these circumstances, and despite the liberality with which pleas for hearings before the Commission are to be interpreted, cf. Joseph v. FCC, 131 U.S.App.D.C. 207, 404 F.2d 207 (1968), we think the Commission cannot be faulted, up to this time, for failure to hold a hearing.
 
 
 63
 However, as to the issue of KCOY's signal strength at Cable TV's headend, to be explored on remand, we believe the presentation of Cable TV and KEYT on this review in effect amounts to a request for an agency hearing in the remanded proceedings. As we view it, the reasonableness of the Commission's nonduplication order may depend upon how this issue is decided. Accordingly, on the remand, Cable TV and KEYT should be granted an evidentiary hearing on this question.
 
 Conclusion
 
 64
 We therefore reverse the order under review and remand the proceedings to the Commission so that it may, on an adequate factual basis, establish the quality, present and potential, of the KCOY signal at the headend of the Cable TV system, and reconsider its nonduplication order in the light of those findings. The only matter which need be inquired into in the remanded proceedings is whether, as to programs for which nonduplication has been ordered, it is technically feasible to receive in Santa Barbara, over the Cable TV system, a KCOY signal of reasonably comparable quality to the signals the Cable TV system would be capable of transmitting to Santa Barbara if freed from the nonduplication order. Specific findings of fact on this issue should be formulated. If the Commission finds that the Cable TV signal under the nonduplication order will be substantially inferior, but it nevertheless determines to reissue a nonduplication order, the Commission shall articulate its reasons for concluding that the viewing interests of Santa Barbarba residents must be thus sacrificed.
 
 
 65
 In the remanded proceeding it will be appropriate for the Commission to take into account its discussion of the Santa Barbara 'plan' contained in its last pronouncement in Docket No. 16430. See text at note 6, above; 21 F.C.C.2d at 364. Many of the same parties are involved in both proceedings and the cases have developed almost simultaneously. It should be recognized, however, that references to a 'plan' for Santa Barbara County in Docket No. 16430 are not completely responsive to the inferior signal claim raised by Cable TV. Such references do not, by themselves, establish that the Commission has weighed fully the possibility of an irreparably degraded KCOY signal.
 
 
 66
 The existence of such a signal problem might well render the 'plan' arbitrary and capricious. This would be true if the result were to force the large number of Santa Barbara Cable TV viewers to receive an inferior network signal simply to protect a station that cannot reach them off-the-air. Thus on remand the Commission must provide more than a reference to the allocations scheme it apparently has adopted for the county.
 
 
 67
 We add, however, that Cable TV has offered two items of evidence on the signal strength issue that, in our opinion, deserve no further consideration on remand. Cable TV's evidence that KCOY is not receivable off-the-air in Santa Barbara has no further relevance, in light of our holding that the Commission nevertheles has the power to order nonduplication under section 74.1109. Likewise, copies of the complaints received by Cable TV during the short-lived period of tone-switching may now be ignored. As the Commission has quite properly pointed out, these letters were very likely prompted by the interruptions inherent in the technique of tone-switching, which is no longer in effect. 20 F.C.C.2d at 135, note 2.
 
 
 68
 Reversed and remanded for further proceedings consistent with this opinion.
 
 
 
 *
 The Honorable Alfred T. Goodwin, United States District Judge for the District of Oregon, sitting by designation
 
 
 [1]
 For the purposes of this review, that order is considered in conjunction with Central Coast Broadcasters, Inc., 20 F.C.C.2d 134 (1969), a memorandum opinion and order adopted by the Commission on October 15, 1969, which denied Cable TV's petition for stay of the August 13 order pending judicial review
 
 
 [2]
 The nonduplication provisions are set forth in section 74.1103 of the Commission's Rules, 47 C.F.R. 74.1103 (1969). In essence the rule requires that when two stations, whose programs are carried over a CATV system, broadcast the same program on the same day, the system must give exclusivity to the closer station, carrying its signal and deleting or substituting another program for the duplicating signals of the more distant station
 
 
 [3]
 To this list of reasons must be added the following statement made by the Commission in the October 15, 1969 denial of Cable TV's petition for a stay of the nonduplication order (see note 1, above):
 'We think it clear that the obtainment of nonduplication protection, and thus the presentation of KCOY-TV's adjacencies, in the large Santa Barbara community will be of significant benefit to this station, facing financial difficulties, and thus will promote the public interest by enabling it better to serve as a needed outlet for local expression in the Santa Maria area.' 20 F.C.C.2d at 136.
 
 
 [4]
 The presently prevailing rule may be less stringent than that proposed by Professor Davis. It probably does not require an evidentiary hearing in all cases where the facts relied on by an agency meet all three of his criteria. See United States v. Pierce Auto Freight Lines, Inc., 327 U.S. 515, 530, 66 S.Ct. 687, 695, 90 L.Ed. 821 (1946), where the Court said:
 'The mere fact that the determining body has looked beyond the record proper does not invalidate its action unless substantial prejudice is shown to result.'
 See also, NLRB v. Johnson, 310 F.2d 550, 552 (6th Cir. 1962).
 
 
 [5]
 It seems to us that what Cable TV and KEYT really dispute is the cause of the KCOY losses, not their existence. They attribute the losses to KCOY's management and debt problems, rather than to its lack of access to Santa Barbara
 
 
 [6]
 FCC Docket No. 16430 is a proceeding commenced prior to the network program exclusivity proceeding now before us. In that proceeding KCOY sought permission to move its transmitter site to Broadcast Peak in the Santa Ynez mountains where its signal would reach both Santa Maria and Santa Barbara off-the-air. KEYT intervened in opposition to KCOY's petition. The requested relief was denied. Central Coast Television, 2 F.C.C.2d 306 (1966); initial decision of Hearing Examiner, 14 F.C.C.2d 1017 (1967); reversed by Review Board, 14 F.C.C.2d 985 (1968); review denied, 18 F.C.C.2d 885 (1969); reconsideration dismissed, 18 F.C.C.2d 794 (1969); petition to seek remand dismissed, 21 F.C.C.2d 363 (1970); appeal pending sub nom. Central Coast Broadcasters, Inc. v. F.C.C., D.C. Cir. Cause No. 23,422
 
 
 [7]
 KCOY argues that the allocations priorities cited by Cable TV and KEYT have to do only with the assignment of television channels, which is only part of the Commission's allocations responsibilities
 
 
 [8]
 Cf. Cedar Rapids Television Co. v. FCC, 128 U.S.App.D.C. 270, 387 F.2d 228, 232 (1967):
 '* * * We think it necessary to remind the Commission that particularly when, as here, it embarks into a new field of regulation, there is a special need for a fuller statement of its reasons.'
 
 
 [9]
 The Review Board in Docket No. 16430 did 'find' KEYT's economic-impact arguments to be unsupported. But it so found only by way of dictum, since in the Board's opinion, it was not required to reach that issue. 14 F.C.C.2d at 994, note 16
 
 
 [10]
 Such an example is the inference that the cost of television advertising in Santa Barbara will rise due to the nonduplication order, thereby deterring businessmen, national and regional, from advertising in that market. Certainly advertising costs may be rising, but there is no explanation of how KCOY's network programming exclusivity on the Cable TV system could be responsible for such an increase
 
 
 [11]
 None of the parties have raised the issue of Cable TV's standing to assert, in this indirect fashion, the grievances of its subscribers. And, in light of our earlier holding on this issue, Great Falls Community TV Cable Co. v. FCC, 416 F.2d 238, 241 at note 7 (9th Cir. 1969), and of the continuing trend toward diminishing standing requirements, cf., Association of Data Processing Organizations, Inc. v. Camp, 397 U.S. 150, 167, 90 S.Ct. 827, 838, 25 L.Ed.2d 184, 200 (1970) and Barlow v. Collins, 397 U.S. 159, 167, 90 S.Ct. 832, 838, 25 L.Ed.2d 192, 200 (1970), we decline to pursue the point here
 
 
 [12]
 See Community Service, Inc. v. United States, 418 F.2d 709, 714 et seq. (6th Cir. 1969); WAIT Radio v. FCC, 418 F.2d 1153, 1156 (D.C. Cir. 1969); West Michigan Telecasters, Inc. v. FCC, 396 F.2d 688, 691 (D.C. Cir. 1968); Presque Isle TV Co. v. United States, 387 F.2d 502, 507-509 (1st Cir. 1967); 2 K. Davis, Administrative Law Treatise, 16.12 (1958)
 
 
 [13]
 See Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 168-169, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962); Alaska Steamship Co. v. Federal Maritime Commission, 344 F.2d 810, 815-816 (9th Cir. 1965); Pacific Power & Light Co. v. Federal Power Commission, 333 F.2d 689, 696 (9th Cir. 1964)
 
 
 [14]
 In footnote 4 to the above statement the Commission added:
 'Cable TV has claimed but not substantiated that it suffers from poor reception of the KCOY-TV signal and that this condition is due wholly to circumstances within the KCOY-TV control. If such is the case, we believe it appropriate, in light of our action under sec. 74.1109 of the rules, to require station KCOY-TV to take all steps and make all expenditures necessary to assure that the signal received by Cable TV is adequate to provide proper service to its subscribers. Cable TV may seek such relief at any time upon an adequate showing of good cause, in the event that KCOY-TV does not voluntarily remedy any poor signal that may exist.' Id. at footnote 4.
 
 
 [15]
 On this point we agree with the statement made in Cable TV's and KEYT's opening brief:
 'Since the evidence submitted by Cable TV suggests that the problem lies in the terrain and not in any willful act of KCOY-TV, this promise (quoted in note 14, supra) offers little relief. Obviously, the Commission must determine whether and how this problem could be corrected before requiring non-duplication protection, not after.'
 
 
 [16]
 In some cases (those involving the top one hundred major television markets), hearings are mandatory under section 74.1109. See Second Report and Order, 2 F.C.C.2d 725, 782-784 (1966). This is not one of those cases
 
 
 [17]
 Cable TV declared that 'since the Commission decision specifically found a hearing unnecessary * * *, a request for a hearing at this time would be a vain exercise.'
 KEYT similarly neglected to make an explicit request for a hearing in its 'Statement in Support' of Cable TV's petition for a stay. However, at one point in that pleading it did allege that 'Cable TV's and KEYT's rights * * * to test the facts on cross-examination in the crucible of evidentiary hearing have been abrogated.'