Marino L. IACOPI et al., Petitioners,

v.

FEDERAL COMMUNICATIONS COMMISSION and United States of America, Respondents,

Columbia Broadcasting System, Inc., Viacom International, Inc., Intervenors.

No. 71-1865.

United States Court of Appeals, Ninth Circuit.

Nov. 12, 1971.

⊙⌐398

Harold R. Farrow (argued), and Ralph M. Segura (argued), Oakland, Cal., for petitioners.

John H. Conlin (argued), Richard E. Wiley, of F.C.C., Washington, D. C., for respondents.

H. M. Plotkin (argued), and J. Roger Wollenberg (argued), of Wilmer, Cutler & Pickering, Washington, D. C., Mc-

Cutchen, Doyle, Brown & Enersen, CBS, Chickering & Gregory, San Francisco, Cal., Paul N. Sternbach, Gen. Counsel, New York City, Robert L. Heald, Richard W. McLaren, Asst. Atty. Gen., Arent, Fox, Kintner, Plotkin & Kahn, Washington, D. C., for real parties in interest.

Before WEICK[*], BROWNING and WRIGHT, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

This is a proceeding to review an order of the Federal Communications Commission. The Commission's memorandum opinion and order were adopted on June 3, 1971, and are reported at 30 F.C.C.2d 9 (1971). The Commission approved the Columbia Broadcasting System, Inc., (CBS) spin-off of Viacom International, Inc., (Viacom) as being in compliance with the Commission's rules. The relevant rules require television networks to divest themselves of their CATV (community antenna television, i. e., cable TV) and domestic syndication interests. We affirm the order of the Commission.

A cable television system is a facility which receives broadcast television and FM radio signals by means of high antennas or microwave transmission, amplifies them, and distributes them by coaxial cable, rather than roof top aerial, to subscribers who pay a fee for the service. Cable TV can bring the viewer from twelve to twenty or more channels, all free of interference. It offers the promise of a wide choice of programs for specialized audiences, supported by subscriber fees, to supplement mass audience programs financed by advertising revenues. See United States v. Southwestern Cable Co., 392 U.S. 157, 88 S.Ct. 1994, 20 L.Ed.2d 1001 (1968); Notice of Proposed Rule-Making and Inquiry, 15 F.C.C.2d 417 (1968).

Syndication involves the licensing of television series and movies to local television stations, both network affiliates and non-network stations. The usual practice is to license older programs and movies.

The two rules involved here, both adopted in 1970, are the outgrowth of several years of hearings conducted by the Commission pursuant to its rule-making authority. The purpose of the rules is to increase competition in network and cable television and to foster independent sources of television programming. See Second Report and Order in Docket No. 18397, 23 F.C.C.2d 816 (1970); Report and Order in Docket No. 12782, 23 F.C.C.2d 382 (1970), reconsideration denied 25 F.C.C.2d 318 (1970), aff'd Mt. Mansfield Television, Inc. v. F. C. C., 442 F.2d 470 (2d Cir. 1971).

The first rule is designed to require the television networks to divest themselves of their CATV systems. It prohibits a CATV system, "including all parties under common control," from carrying the signal of any television broadcast station "if such system directly or indirectly owns, operates, controls, or has an interest in * * * [a] national television network." 47 C.F.R. 74.1131(a) (1970).

This rule becomes effective on August 10, 1973, as to interests in existence on or before July 1, 1970. It is already in effect as to subsequently acquired interests. Because CBS acquired its CATV interests before July 1, 1970, the rule would not have been effective as to the interests involved here until August 10, 1973. 47 C.F.R. 74.1131, Note 3(d).

The second rule prohibits networks from engaging in the domestic syndication of television programs, restricts their foreign distributions to programs wholly produced by them, and imposes restrictions on future acquisitions of program rights. 47 C.F.R. 73.658(j) (1970). It has recently been affirmed by the Second Circuit in Mt. Mansfield Television, Inc. v. F. C. C., 442 F.2d 470

[*] Hon. Paul C. Weick, Circuit Judge, United States Court of Appeals for the Sixth Circuit, sitting by designation.

(2d Cir. 1971). The effective date of this rule was stayed, pending further order of the Commission, to permit judicial review. 35 Fed.Reg. 16371 (1970). Thus it, like the CATV rule, was not effective as to the interests involved here at any time relevant to our review.

In July, 1970, CBS notified the Commission that it proposed to comply with the new rules by divesting itself of its CATV and syndication interests. CBS planned to set up a subsidiary (Viacom) and to transfer to it all CBS CATV and syndication interests. CBS would then "spin-off" its subsidiary by distributing the stock of Viacom to the shareholders of CBS on a pro rata basis. The spin-off was scheduled to take place on December 31, 1970.

Two groups appealed to the Commission to block the proposed transaction. Petitioners Iacopi, et al., (Iacopi) filed a Petition for Emergency Relief on December 11, 1970. Columbia Pictures, et al., (Columbia Pictures) filed a Motion for Declaratory Order on December 14, 1970. Both Iacopi and Columbia Pictures alleged that the proposed spin-off would not comply with the Commission's rules because it would not create an independent company. They argued that CBS would continue to exercise effective control over Viacom after the spin-off.

On December 31, 1970, the Commission issued an order directing CBS to furnish further details of the proposed transaction. It also stayed the distribution by CBS to its shareholders of the Viacom stock pending further order of the Commission. Columbia Pictures Industries, Inc., 26 F.C.C.2d 901 (1970).

CBS, Columbia Pictures, and Iacopi then made voluminous submissions to the Commission. CBS modified the proposed spin-off. The complainants contended that it still would not comply with the Commission's rules.

After considering the materials submitted, the Commission, on June 3, 1971, adopted the memorandum opinion and order challenged here. The Commission found that the spin-off, as modified by CBS and subject to additional restraints imposed by the Commission, complied with the rules of the Commission. Columbia Pictures Industries, Inc., 30 F.C.C.2d 9 (1971). The Commission dissolved its stay of December 31, 1970, and the spin-off was consummated.

## I. STANDING

Petitioners Iacopi, et al., are minority shareholders of Television Signal Corporation (TVS), one of the CATV systems in which CBS held an interest prior to the spin-off. TVS is a California corporation engaged in the CATV business in San Francisco. Iacopi, et al., are residents of San Francisco.

Our jurisdiction is invoked pursuant to 28 U.S.C. §§ 2342, 2344 and 47 U.S.C. § 402(a). Venue is proper under 28 U.S.C. § 2343. CBS and Viacom have been permitted to intervene pursuant to Fed.R. App.P. 15(d).

Prior to the creation of Viacom, CBS owned 81% of TVS; Iacopi owned 19%. Iacopi was thus a minority shareholder of a CBS subsidiary. After the spin-off Viacom owned 81% of TVS, Iacopi owned 19%, and Iacopi was a minority shareholder of a Viacom subsidiary.

It is not clear why this makes Iacopi "aggrieved." Indeed, the Commission's determination that the spin-off was in compliance with the Commission's CATV divestiture and program syndication rules seems to involve Iacopi only very peripherally. Because of the rather tenuous connection between Iacopi and the Commission's order, we examine the question of Iacopi's standing to seek review of the order.

Under the guidelines laid down by the Supreme Court in Association of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970), Iacopi must show (1) that he satisfies the "case or controversy" test of Article III of the Constitution by showing that the Commission's order has caused him "injury in fact," and (2) that the interest he seeks to protect is arguably within the zone of interests to be protected or regu-

lated by the Communications Act of 1934, as amended, 47 U.S.C. § 151ff.

Iacopi attempts to argue that he has been injured in fact. His argument is that, if the Commission had disapproved the proposed spin-off, CBS would have had to place its TVS stock on the open market. Iacopi asserts that with CBS selling its shares on the open market, Iacopi would have been able (1) to sell his interest to the purchasers chosen by CBS, or (2) to purchase CBS's interest, or (3) to accept his new "partner."

At best all of Iacopi's hypotheticals are speculation and conjecture. Had the Commission disapproved the spin-off, CBS might have arranged a private placement of its TVS shares or a public sale to a party not interested in purchasing Iacopi's holdings. CBS might have been unwilling to sell to Iacopi, or Iacopi unwilling or unable to purchase on CBS's terms. Had CBS placed its shares on the open market, Iacopi might well have found its new "partner" or "partners" far less attractive than Viacom, which is endowed with experienced management chosen by CBS and possessed of all the former CBS CATV and syndication interests.

Iacopi bewails his minority shareholder position, noting that his prime candidate in seeking a buyer for his interest must always be the holder of the 81% interest. Indeed it appears that Iacopi and CBS-Viacom engaged in negotiations concerning a possible purchase by CBS-Viacom of the Iacopi interest prior to the spin-off, and Iacopi was offered a substantial sum for his shares. This lawsuit apparently results from Iacopi's evaluation that the offer was too low.

We are unable to agree that the Commission's order is responsible for the fact that Iacopi does not enjoy his minority shareholder status. That Iacopi's 19% interest is "locked-in" with whoever holds the 81% interest does not seem to us to be an injury flowing from the Commission's order.

To bolster his claim of injury in fact, Iacopi has attempted throughout this proceeding to litigate issues presently pending before the District Court for the Northern District of California in Iacopi v. Columbia Broadcasting System, Inc., No. C–70–2632 RFP. In that action Iacopi alleges, *inter alia,* securities and antitrust violations and breach of fiduciary duty ·by CBS in its activities as majority shareholder of TVS. We express no opinion on the merits of Iacopi's allegations. We observe only that such claims are before the district court and not relevant to the present petition for review of the Commission's order.

Thus we doubt that Iacopi, as a minority shareholder of TVS, has presented a "case or controversy" within Article III of the Constitution.

We are likewise unimpressed by Iacopi's assertion that he has standing as a taxpayer or concerned citizen. He does not present a pressing constitutional issue, as in Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). Nor is he an organized consumer group seeking to further the public interest, as in Environmental Defense Fund, Inc. v. Hardin, 138 U.S.App.D.C., 428 F.2d 1093 (D.C.Cir. 1970), and Office of Communication of United Church of Christ v. F. C. C., 123 U.S.App.D.C., 359 F.2d 994 (D.C.Cir. 1966). Rather, he is seeking to further his own private interest, *i. e.,* to extricate himself from his minority shareholder status.

We do not read recent Supreme Court holdings in this area to say that any taxpayer or citizen, no matter how remote his interest, may obtain review of federal agency orders in order to press his private interest. *See* Association of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970). *See also* the words of then Circuit Judge (now Chief Justice) Burger in *United Church of Christ, supra,* at 359 F.2d 1006:

"* * * [I]ntervention on behalf of the public is not allowed to press private interests but only to vindicate the broad public interest * * *."

We believe this is still the rule.

Finally we are most certainly unconvinced that Iacopi's interest in ameliorating his position as a minority shareholder in TVS is "arguably within the zone of interests" protected by the Communications Act. Association of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L. Ed.2d 184 (1970). Clearly neither the Act nor the Commission's rules here under review were designed to serve any interest of shareholders in CATV systems who might wish to alter ownership patterns for their private benefit.

However, in light of several recent Supreme Court holdings which seem greatly to enlarge the class of persons entitled to standing before the federal courts [see Investment Company Institute v. Camp, 401 U.S. 617, 91 S.Ct. 1017, 28 L.Ed.2d 288 (1971), Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402 (1971), Arnold Tours, Inc. v. Camp, 400 U.S. 45, 91 S.Ct. 158, 27 L.Ed.2d 179 (1970), and Barlow v. Collins, 397 U.S. 159, 90 S.Ct. 832, 25 L. Ed.2d 192 (1970)], and in the interest of avoiding protracted litigation, we pass over the issue of standing without deciding it and proceed to the merits. We do this despite grave doubts as to Iacopi's standing. However, because we affirm the order of the Commission on the merits, it is unnecessary for us to reach the standing issue.

## II. THE ORDER OF THE COMMISSION

At the outset we note that the validity of the Commission's rules is not here in question. The program syndication rule has recently been upheld by the Second Circuit in Mt. Mansfield Television, Inc. v. F. C. C., 442 F.2d 470 (2 Cir., 1971). Although the parties have not cited any case in which the rule forbidding cross-ownership between broadcast TV networks and cable TV systems has been reviewed, we note that the Fifth Circuit has recently upheld a similar rule prohibiting cross-ownership between telephone companies and CATV systems within their areas of telephone service.

General Telephone Company of the Southwest v. United States, 449 F.2d 846 (5th Cir. 1971). However, no party challenges the validity of either of the two rules before us.

Nor is the wisdom of the Commission's rules at issue. We do not sit as a super-agency to determine the wisdom of Commission policies. The Commission has determined that network divestiture of CATV and syndication interests will increase competition and foster independent sources of TV programming. We defer to that interpretation.

What is subject to review is the Commission's determination that the CBS spin-off of Viacom is in compliance with the two relevant rules. Iacopi contends that the Commission erred in applying its own rules and failed to follow proper procedures in reaching its decision.

After thorough consideration of all of Iacopi's contentions in its memorandum opinion of June 3, 1971, the Commission determined that the CBS spin-off of Viacom—subject to conditions imposed by the Commission— would be in compliance with its rules. The order under review thus reflects the Commission's interpretation of its own rules. That interpretation is entitled to great deference. Udall v. Tallman, 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965); Bowles v. Seminole Rock Co., 325 U.S. 410 (1945); F. C. C. v. Pottsville Broadcasting Co., 309 U.S. 134, 60 S.Ct. 437, 84 L.Ed. 656 (1940). Cf. Zuber v. Allen, 396 U.S. 168, 192–194, 90 S.Ct. 314, 24 L.Ed.2d 345 (1969).

### a. Anti-competitive effects.

Iacopi asserts that the Commission failed to consider the anti-competitive effects of its order in three respects: (1) The Commission's order does not actually end "common control" of CBS and Viacom; (2) the Commission should have specifically required certain CBS officers to dispose of their Viacom stock; and (3) the Commission failed to consider the anti-competitive effects of allowing Viacom to operate both CATV and syndication interests, which Iacopi

alleges to be illegal horizontal integration.

■ (1) With regard to common control of CBS and Viacom, the Commission determined the following facts. After the spin-off, six of the nine directors of Viacom would be persons who had not previously been directors, officers, or employees of CBS.[1] The remaining three directors, who were to be the principal executive officers of Viacom, were former employees of CBS.

CBS proposed that each CBS director, officer, and division president who would be entitled to receive one hundred or more shares of Viacom, and each individual shareholder who would have the right to vote more than one percent of the outstanding common shares of Viacom, would execute a voting trust for his Viacom shares under which the voting trustee would vote those shares in proportion to the votes cast by all Viacom shareholders not parties to the voting trust agreement. Principle CBS shareholders offered to reduce their shareholdings in Viacom below one percent if ordered by the Commission.

Under the CBS proposal, all CBS CATV and syndication interests would be transferred to Viacom. CBS would retain, as permitted by the Commission's rules, only profit shares in the existing television programs whose syndication rights were being transferred to Viacom. The Viacom syndication activities with respect to these programs would be performed under an agreement with CBS which provided for the payment to Viacom of its direct distribution costs plus a percentage of gross receipts.

The Commission noted that there had already been heavy trading in Viacom stock (on a "when issued" basis) and that, while it was not possible to determine how much of the stock had been sold to existing CBS shareholders, the reasonable forecast was that CBS and Viacom shareholdings would gradually disperse.

However, the Commission was unwilling to wait for the gradual dispersal of shareholdings to ensure absence of common control. Instead the Commission required all CBS officers and directors, Broadcast Group division presidents, and any individual shareholder with one percent or more of CBS stock to dispose of their Viacom shares to persons other than close relatives or organizations in which they have substantial interests. The Commission decided that these shares should remain under the proposed trust agreement until removed for sale in accordance with the terms of the Commission's opinion. The Commission ordered the sales to be made within two years. Stock held in brokerage house street names was included in the Commission's order.

The facts found by the Commission are supported by substantial evidence. Indeed the basic facts are not in dispute. Only the inferences to be drawn from them are contested.

We hold that on the issue of common control the Commission has made a reasonable interpretation of its regulations, supported by substantial evidence in the record. We defer to the Commission's interpretation.

■ (2) Iacopi challenges the omission of non-Broadcast Group presidents from the list of CBS officers, directors, Group presidents, and shareholders required to dispose of their Viacom stock. Needless to say we do not sit to amend minor details of Commission orders; nor would we consider voiding a Commission order on such a minor point so peculiarly within the expertise of the Commission.

■ (3) Iacopi also assails what he asserts is illegal horizontal integration —the combined operation of CATV and syndication interests by Viacom. He asserts that the Commission was obliged

---

1. One of these directors had done legal work for CBS subsidiaries being transferred to Viacom. CBS represented that after the spin-off neither he nor his law firm would perform legal work for CBS or any entity controlled by CBS.

to turn its consideration of the challenged spin-off into a full scale investigation of whether CBS (and by implication the other networks) has been a continuing antitrust violation which Viacom would inherit and perpetuate. The Commission determined, quite sensibly, that this was a question of broad applicability going well beyond the challenged spin-off and that to consider it would needlessly complicate and delay the present proceeding. We certainly do not feel constrained to overturn the Commission's order on this account.

In affirming the Commission's order we note that, should it develop that CBS has in fact maintained lingering control over the proscribed interests, despite the stringent conditions imposed, the Commission will retain full power to deal with the situation. It will have the power to enforce its CATV and syndication rules should violations occur, and to modify the rules if they prove inadequate. We are assured that Viacom has obligated itself to take any action necessary to comply with lawful orders of the Commission in this respect.

b. *Licensing claims.*

 Iacopi further asserts that the Commission should have treated this proceeding as a licensing proceeding under Section 309 of the Communications Act, 47 U.S.C. § 309. The Commission would thus have been required to hold a full evidentiary hearing, and to determine that the character standards for Commission licensees had been met.

There is no basis for this contention. Neither the CATV nor the syndication businesses transferred to Viacom have ever been licensed by the Commission. Nor is it the present policy of the Commission to license these businesses. The provisions of Section 309 are simply not applicable to cable TV. Notice of Proposed Rule-Making in Docket No. 18892, 25 F.C.C.2d 50 (1970); *see also* Total Telecable, Inc. v. F. C. C., 411 F.2d 639, 644 n.6 (9th Cir. 1969).

CATV systems commonly hold FCC licenses for auxiliary radio facilities.

CBS CATV subsidiaries held several such licenses. However, all were surrendered. In the event that Viacom applies for any such licenses (as it apparently intends to do), the regular licensing requirements will apply.

The procedures of the Commission were well within the broad authority granted it by the Congress to conduct its proceedings "in such manner as will best conduce to the proper dispatch of business and to the ends of justice." 47 U.S.C. § 154(j). *See* F. C. C. v. Schreiber, 381 U.S. 279, 85 S.Ct. 1459, 14 L. Ed.2d 383 (1965).

We have considered Iacopi's other contentions and find them to be without merit.

The Commission gave careful, thorough, indeed meticulous consideration to all of Iacopi's claims. Its opinion and order are reasonable and supported by substantial evidence. We defer to the Commission's interpretation of its own regulations.

Therefore, the stay entered by this court on June 4, 1971, is dissolved and the order of the Commission is affirmed.

Affirmed.